Edwin W.F. DYER III, Plaintiff and Appellant,

v.

NORTH DAKOTA DEPARTMENT OF HUMAN SERVICES, Defendant and Appellee.

Civ. No. 920287.

Supreme Court of North Dakota.

March 24, 1993.

Gregory Ian Runge (argued), Bismarck, for plaintiff and appellant.

Appearance by plaintiff and appellant Edwin W.F. Dyer III.

Elaine Ayers (argued), Asst. Atty. Gen., Atty. Gen. Office, Bismarck, for defendant and appellee.

MESCHKE, Justice.

Edwin W.F. Dyer III appeals from a judgment affirming an administrative hearing officer's decision that he was not denied veterans' preference by the North Dakota Department of Human Services. We affirm.

In November 1991 the Department, a merit system agency under NDCC 54–42–06,[1] advertised an HSPA IV position in the Child Support Enforcement Unit of its Office of Economic Assistance. According to a position information questionnaire prepared by the Department, the primary duties and responsibilities for the position were developing and maintaining policies and procedures for the child support enforcement program; providing technical assistance, consultation, training, and staff development; providing advice, written opinions, and research on state and federal laws and regulations; and providing annual reviews and corrective action planning for field offices.

Dyer, a veteran as defined by NDCC 37–19.1–01(5), applied for the position and submitted a merit system application to the Central Personnel Division of the North Dakota Merit System Council. Relying upon each candidate's written application for the position, Central Personnel rated the applicants on their education and experience. After Central Personnel added five veterans' preference points to Dyer's rating under NDCC 37–19.1–02(4)(d), he totaled 99 points. Central Personnel provided the Department with a certified list of eligible persons that listed Dyer and six other external applicants for the position. Dyer's 99 points gave him the highest rating on the certified list of eligible persons.

The Department then interviewed two internal applicants and six of the external applicants, including Dyer. A three-person panel from the Department conducted the interviews and scored the applicants' responses to eleven predetermined questions. Based solely on the Department's interview scores, Dyer received 99 points and was rated fourth behind applicants with 121, 120, and 110 points. The Department offered the job to the applicant who had received 121 points in her interview, and she accepted the position. The successful applicant had received a rating of 74 on Central Personnel's certified list of eligible persons, which placed her fourth on that list behind Dyer and two other applicants with 81 points.

Pursuant to NDCC 37–19.1–04,[2] the Department notified Dyer that he had not

**1.** NDCC chapter 54–42 creates the North Dakota Merit System Council with authority to establish rules and regulations that are binding on the agencies affected. NDCC 54–42–03. The director of the Merit System Council is authorized to establish general policies and rules for applications and examinations, and for establishing lists of eligibles, certifications, and appointments. NDCC 54–42–03(2) and (3). Under that authority, the Merit System Council promulgated rules, effective September 1, 1992, generally governing merit system employment. *See* NDAC 4–07–22 et seq. When Dyer sought employment with the Department, the operative provisions were under North Dakota State Employees Personnel Policies, Chapter 2, Sections 5–8.

**2.** NDCC 37–19.1–04 says
　　1. If a veteran, or a qualified veteran's spouse, hereafter known as the applicant is not given the preference provided in sections 37–19.1–02 or 37–19.1–03, the applicant within fifteen days after notification by certified mail that employment has been refused, may request a hearing before a hearing officer as provided in subsection 3. The request must be in writing and must be delivered to the commissioner of veterans' affairs by certified mail with return receipt requested. The applicant is entitled to immediate employment in the position for which application was originally made, or an equivalent position, if the hearing officer finds in favor of the applicant.
　　　＊　　＊　　＊　　＊　　＊　　＊
　　3. At the request of the commissioner of veterans' affairs, the attorney general shall appoint a hearing officer knowledgeable in personnel administration to hear grievances arising under subsection 1 or 2. The hearing officer is entitled to be reimbursed by the employing agency for expenses incurred in

been selected for the job, and he requested an administrative hearing, asserting that the Department had denied him veterans' preference. A hearing officer determined that Dyer was not denied veterans' preference and that the Department had "justifiable cause" for not hiring him. The district court affirmed the hearing officer's decision, and Dyer appealed.

Pursuant to NDCC 37–19.1–04(4), any party aggrieved by a hearing officer's decision may appeal to the district and the supreme court in the manner provided by the Administrative Agencies Practice Act, NDCC chapter 28–32. Under NDCC 28–32–21 and 28–32–19, we affirm an administrative agency decision if its findings of fact are supported by a preponderance of the evidence, its conclusions of law are supported by its findings of fact, its decision is supported by its conclusions of law, or its decision is in accordance with the law. *Matuska v. North Dakota Workers Compensation Bureau*, 482 N.W.2d 856 (N.D.1992). We review the hearing officer's decision under those standards.

Dyer argues that the hearing officer's decision is not in accordance with the law, because he was not accorded the veterans' preference mandated by NDCC chapter 37–19.1. He asserts that, based on Central Personnel's rating on the certified list of eligible persons, he was the best qualified applicant for the job and the Department could not use a "subjective" interview to

vary Central Personnel's "examination grade." He also contends that the Department's interview did not establish "justifiable cause" to deny him employment, because "justifiable cause" encompasses only physical or mental disability to properly perform the duties of the job, and he was physically and mentally able to perform those duties. The Department responds that, because it is a merit system agency, Dyer's veterans' preference was not an absolute entitlement to employment and that Dyer was accorded veterans' preference through Central Personnel's five point enhancement of his rating on the certified list of eligible persons. The Department argues that "justifiable cause" is broader than physical or mental disability to properly perform the duties of the job, and asserts that Dyer's interview established "justifiable cause" for not hiring him.

The interpretation of a statute is a question of law. *Kim–Go v. J.P. Furlong Enterprises, Inc.*, 460 N.W.2d 694 (N.D. 1990). In construing NDCC chapter 37–19.1, our duty is to ascertain the legislative intent that must be sought initially from the language of the statute. *County of Stutsman v. State Historical Society*, 371 N.W.2d 321 (N.D.1985). We conclude that the hearing officer correctly interpreted the veterans' preference statute.

NDCC 37–19.1–02[3] outlines the statutory framework for veterans' prefer-

performing these duties. The hearing officer shall hold the hearing within fifteen days after the hearing is requested by the commissioner of veterans' affairs. At the hearing, both parties may be represented by counsel. If the hearing is requested pursuant to subsection 1, the employing agency has the burden of proving that the veteran or the qualified veteran's spouse did not possess the qualifications required for the position. If the hearing is requested pursuant to subsection 2, the employing agency has the burden of proving that any action which was taken was not taken because of exercise of the right to an employment preference. The hearing officer shall issue findings and an order within fifteen days after the hearing is concluded. The order is binding on both parties, subject to appeal.
4. Any party aggrieved by the finding and order of the hearing officer may appeal in the

manner provided for in chapter 28–32, provided that notice of appeal need only be served on the other party, and the appellant need not execute an undertaking. Any party aggrieved by the decision of the district court may appeal that decision to the supreme court as provided in chapter 28–32. Appeals to the district court under this subsection must be heard without a jury.

3. NDCC 37–19.1–02 says
   1. Veterans who are North Dakota residents are entitled to preference, over all other applicants, in appointment or employment by governmental agencies, provided that such veteran is a United States citizen at the time of application for employment. Veterans qualified for preference may not be disqualified from holding any position with an agency because of physical or mental disability, unless such disability renders them unable to

ence in hiring decisions by governmental agencies. Subsection (1) generally requires governmental agencies to give an employment preference to veterans who are North Dakota residents and United States citizens at the time of application for employment,[4] and prohibits those agencies from denying employment to veterans "because of physical or mental disability, unless such disability renders them unable to properly perform the duties of the position."

Subsections (2) and (4) establish separate and distinct veterans' preference guidelines that are based on whether or not governmental agencies have an established personnel system. Subsection (2) applies to agencies without an established personnel

properly perform the duties of the position applied for.

2. When a veteran applies for appointment or employment under subsection 1, the officer, board, or person whose duty it is to appoint or employ a person to fill the available position shall, except where the veteran has been qualified for the position applied for under a personnel system, investigate the qualifications of the veteran. If the veteran is found to possess the qualifications required for the position applied for, whether educational or by way of prior experience, and is physically and mentally able to perform the duties of the position applied for, the officer, board, or person shall appoint or employ the veteran.

3. A disabled veteran is entitled to a preference superior to that given other veterans under this section, which preference must be accorded in the manner provided in this section.

4. Notwithstanding the preference provisions in subsections 1, 2, and 3, public employment preference for veterans by agencies or governmental agencies, as defined herein, which now have, or which may hereafter have, an established personnel system under which it maintains a register of persons eligible for employment and from which it certifies a prescribed number of names to that particular agency or governmental agency, must be governed by the following:

a. No distinction or discrimination may be made in the administration of the examination because the applicant may be a veteran.

b. Upon completion of the examination with a passing grade, the applicant must be informed of a veteran's rights to employment preference as hereinafter provided.

c. The applicant must be required to furnish proof of his status as a veteran and, if disabled, proof of his disability, as defined herein.

d. Upon receipt of proof required in subdivision c, the examiner shall add five points for a nondisabled veteran and ten points for a disabled veteran to the examination grade of the applicant, and the total is the veteran's examination grade.

e. Upon request for the prescribed number of eligible persons from the eligibility registry, such number of eligible persons must be certified from the top number of eligible persons and with such certified list of eligible persons there must also be submitted a state-ment as to which of those so certified are veterans, disabled veterans, or nonveterans.

f. In the event the certified list of eligible persons includes either veterans or disabled veterans, the appointing or employing authority of that particular agency or governmental agency shall make a selection for the available position as follows:

(1) A disabled veteran, without regard to his examination grade, is first entitled to the position and, in the absence of justifiable cause, documented in writing, for not making such selection, must be so appointed or employed. If such list includes two or more disabled veterans, then the one with the highest examination grade is first entitled to the position and, in the absence of justifiable cause, documented in writing, for not making such selection, must be so appointed or employed.

(2) When such certified list of eligible persons does not include one or more disabled veterans and consists only of veterans, then the one with the highest examination grade is first entitled to the position and, in the absence of justifiable cause, documented in writing, must be so appointed or employed.

(3) When such certified list of eligible persons includes nonveterans and veterans, but not disabled veterans, then the one with the highest examination grade, whether a nonveteran or a veteran, is first entitled to the position and, in the absence of justifiable cause, must be so appointed or employed; and if the one with the highest examination grade is a veteran and is not appointed or employed, there must be justifiable cause documented in writing for not making such appointment or employment.

5. The provisions of this section do not apply when the position to be filled is that of a superintendent of schools, teacher, or the chief deputy or private secretary of an elected or appointed official. Temporary committees and individual or group appointments made by the governor or legislative assembly are also excepted from the provisions of this section.

4. *Compare Attorney General of New York v. Soto–Lopez,* 476 U.S. 898, 106 S.Ct. 2317, 90 L.Ed.2d 899 (1986) (state limit on civil service veterans' preference to only those veterans who were residents of state when they entered military service held unconstitutional).

system (non-merit system agencies) and directs that after investigation of the qualifications of the veteran, the agency "shall appoint or employ the veteran" if the veteran possesses the required qualifications and is physically and mentally able to perform the job. Subsection (4) governs agencies with "an established personnel system under which it maintains a register of persons eligible for employment and from which it certifies a prescribed number of names" (merit system agencies). The Department is a merit system agency, and the parties agree that subsection (4) governs this case.

Subsection (4) requires an "examiner" to add points to a veteran's "examination grade" for the compilation of a "certified list of eligible persons" that is submitted to the "appointing or employing authority." NDCC 37–19.1–02(4)(d), (e), and (f). Subsection (4)(f) outlines the merit system agencies' employment preferences from the "certified list of eligible persons," and, as relevant to this case, directs that when a "certified list of eligible persons" includes nonveterans and veterans who are not disabled, "the one with the highest examination grade, whether a nonveteran or a veteran, is first entitled to the position and, in the absence of justifiable cause, must be so appointed or employed; and if the one with the highest examination grade is a veteran and is not appointed or employed, there must be justifiable cause documented in writing for not making such appointment or employment." NDCC 37–19.1–02(4)(f),

(3). Under subsection (4), the person with the highest "examination grade" is not accorded an absolute entitlement to employment if the merit system agency documents "justifiable cause" for hiring another person.

The limited nature of veterans' preference for merit system agencies is supported by the relevant legislative history. *See* 1973 N.D. Laws, ch. 282. As originally introduced in 1973 as Senate Bill 2113, the sections for merit system agencies mandated that if the appropriate personnel system certified that a veteran was qualified, or the North Dakota Merit System Council certified that a veteran had passed an examination, the employing authority "shall appoint or employ" the veteran.[5] However, representatives from merit system agencies opposed that absolute preference because it "would preclude hiring the best applicants." Minutes of Veterans Affairs Committee of House on Senate Bill 2113, p. 2, January 30, 1973. A representative from the Veterans' Coordinating Council proposed the "justifiable cause" language to allow merit system agencies to "pass over a veteran to accept a non-veteran with a lower score, [if] they document justifiable cause for so doing." Minutes of Veterans Affairs Committee of House on Senate Bill 2113, Prepared Testimony of William Williamson, February 1, 1973. The Legislature thereafter enacted, but did not define, the "justifiable cause" language for merit system agencies.

---

5. As introduced in 1973, Senate Bill 2113 said, in part:

3. In any political subdivision having an established personnel system, no inquiry shall be made of any applicant, before examination of his qualifications, as to whether or not he is a veteran. No distinction or discrimination shall be made in the administration of the examination because the applicant may be a veteran. The appropriate personnel system shall, upon completion of the examination, inform the applicant of the right of a veteran to an employment preference, and require the applicant to furnish proof of his status as a veteran or disabled veteran. The appropriate personnel system shall certify, if such is the case, that the applicant is qualified and is a veteran entitled to preference, and the appointing or employing authority shall appoint

or employ the veteran to fill the position available.

4. The North Dakota merit system council shall not make any distinction in the administration of an examination because an applicant may be a veteran. If the applicant passes the examination, the North Dakota merit system council shall notify him of that fact, and of the fact that a veteran is entitled to an employment preference. The North Dakota merit system council shall certify that the applicant has passed the examination and, if such is the case, that he is a veteran entitled to preference by the agency with an employment position to fill. The appointing or employing authority in that agency shall appoint or employ a qualified veteran to fill the position available.

Dyer's interpretation of "justifiable cause" as meaning only a physical or mental disability that renders the veteran unable to properly perform the duties of the job would define "justifiable cause" in terms of the general disqualifying criteria of NDCC 37–19.1–02(1). *See* footnote 3. The disqualifying criteria of physical or mental disability are already specifically expressed in subsection (1), and Dyer's interpretation would render the "justifiable cause" language in subsection (4) surplusage. Such an interpretation is contrary to our canon of construction that statutes must be interpreted as a whole to give meaning, if possible, to all clauses and phrases. *County of Stutsman.* Accordingly, we decline to construe "justifiable cause" to mean only a physical or mental disability that renders a veteran unable to properly perform the duties of the job.

Instead, we construe "justifiable cause" in its plain, ordinary, and commonly understood sense, with consideration given to the context of its use and to the purpose that prompted its enactment. *County of Stutsman.* Webster's New World Dictionary, Second College Edition (1980), defines "justifiable" as something "that can be justified or defended as correct" and "justify" as "just, right, or in accord with reason; vindicate." The same source defines "cause" as "a reason, motive, or ground for some action, feeling, etc.; esp., sufficient reason." Those commonly understood definitions correspond with the meaning of "justifiable cause" in other contexts. *Cf. Taylor v. Hill,* 10 Ark.App. 45, 661 S.W.2d 412 (1983) [under adoption statute dispensing with requirement of parental consent if parent fails, without justifiable cause, to communicate or provide support for child, "justifiable cause" means the parent must have acted arbitrarily and without just cause or adequate excuse].

Additionally, in the context of veterans' preference and hiring decisions, we also recognize that governmental agencies are generally accorded some discretion. *Commissioner of Metropolitan District Commission v. Director of Civil Service,* 348 Mass. 184, 203 N.E.2d 95 (1964); *Olson v. State,* 235 Mont. 31, 765 P.2d 171 (1988);

*Vislisel v. University of Iowa,* 445 N.W.2d 771 (Iowa 1989). *See also* 77 Am.Jur.2d *Veterans* § 122 (1975). *Cf. Rudnick v. City of Jamestown,* 463 N.W.2d 632 (N.D. 1990) [substantive merits of disciplinary action are subject to limited judicial review with deference to disciplinary authority]. We believe that a governmental agency's discretion in hiring decisions, coupled with the identified purpose of allowing merit system agencies to hire the best applicants and with the plain, ordinary, and commonly understood meaning of justifiable cause, indicates that the Legislature intended "justifiable cause" to mean grounds for action that are in accord with sufficient reason, or that can be justified or defended as correct.

■ Under that construction, nothing in the veterans' preference law precludes a merit system agency from personally interviewing applicants on a "certified list of eligible persons" in order to determine and, if necessary, document "justifiable cause." In making difficult hiring decisions in the dynamics of a workplace, the flexibility and discretion accorded to merit system agencies by the Legislature make personal interviews important and desirable. Although there is an element of subjectivity in personal interviews, merit system agencies must nevertheless document "justifiable cause" for not hiring the highest rated individual on a certified list of eligible persons. The requirement of "justifiable cause" recognizes merit system agencies' discretion and flexibility to hire the best applicants while preventing those agencies from acting in a totally arbitrary or unjustified manner.

In that context we review the hearing officer's finding that "the interview panel's unanimous assessment that Dyer demonstrated poor communication skills, an essential requirement for the job, and his lack of experience conducting training, an essential duty of the job, disqualified him as a candidate for the position," and the hearing officer's determination that "justifiable cause existed for not selecting Dyer for the position of HSPA IV."

Under NDCC 37–19.1–02(4), Dyer's veterans' preference was not an absolute entitlement to employment. Central Personnel graded the education and experience of all the applicants, and, after adding five veterans' preference points to Dyer's score, supplied the Department with a certified list of eligible persons that rated him at 99 points, the highest score for any of the applicants. Dyer was accorded the five point enhancement mandated by NDCC 37–19.1–02(4)(d), and was interviewed for the job. After personally interviewing Dyer and other applicants with eleven predetermined questions, one of the interviewers, the Director of the Child Support Enforcement Unit, documented that Dyer "left the impression of being distant & intellectual. Lacked the experience in providing training. Requested salary at top of range for which budget does not exist." The Director explained:

Q. [Ms. Ayers] Lets concentrate on the reasons that you give for declining to hire Mr. Dyer. The first one, "Left the impression of being distant and intellectual?" Why does that disqualify him from this position, or go against him?

A. Well, I was very much concerned in the area of being able to train staff, and not come at it from a very distant intellectual aspect. The trainer must bring himself down to the level of that staff and establish [rapport] in order to provide the specific relationship thereto for the training to be acceptable.

Q. So this comment is less than an attack on Mr. Dyer's personality, than it is on his ability to communicate with others?

A. That is correct.

Q. Okay, again the ability to communicate and to train others is an important part of the position for which he was considered?

A. We're looking at a good 25% of time, yes.

Q. [Y]our second statement of reasons for declining to hire Mr. Dyer relates to this: "Lack the experience in providing training." Do you recall, if any, what training he had in training.

A. I believe he had conducted some training sessions, but as I recall those sessions were basically with other attorneys who [are] professionals and so forth.

Q. And the training he would be doing in this job, if he'd been hired for it, would it not have been the same level with individuals?

A. There are ultimate trainers in the field, but the large majority of the people that need training are investigators, clerical support types of people, Clerks of Court, etc.

Q. And his inexperience in training of others was held against him, was it not, by the Interview Committee.

A. That's correct.

Q. Your final comment is that he requested salary at end of Range, for which budget does not exist. How does that keep him out of this job?

\*    \*    \*    \*    \*    \*

A. The problem was when this position was transferred to me from the interdepartmental allocation of the positions the salary of $47,500.00 and the $3,293 dollars that Mr. Dyer requested for the 18 remaining months of the biennium would have require[d] a salary figure of $59,274.00, which was ... above what I had in the budget.

Q. So he priced himself out of this job?

A. Yes, I suppose that would be a fair characterization.

The Director's testimony shows that the Department determined that Dyer lacked the experience and communication skills necessary to train the field staff in the child support enforcement unit. The Department's position information questionnaire indicated that training constituted twenty-five percent of the job. The Director also testified that Dyer "priced himself out of this job."

Under our standard of review, we believe that the hearing officer reasonably determined by the weight of the evidence from the entire record that the Department had justifiable cause not to hire Dyer. The evidence establishes that, giving appropriate consideration to the Department's dis-

cretion in hiring decisions, its decision in this case is in accord with sufficient reason and can be justified and defended as correct. We conclude that the hearing officer's decision is supported by a preponderance of the evidence. Dyer was given the veterans' preference required by NDCC 37–19.1–02(4) and the hearing officer's decision is in accordance with the veterans' preference law.

The district court judgment is affirmed.

VANDE WALLE, C.J., and SANDSTROM, NEUMANN and LEVINE, JJ., concur.

VANDE WALLE, Chief Justice, concurring specially.

I concur in the opinion written for the Court by Justice Meschke. I write separately to acknowledge that this construction of the veterans' preference in personnel-system agencies may result in little more than the veteran being given a written explanation ("justifiable cause documented in writing for not making such appointment or employment") as to why the veteran was not employed.

Because the object of the veterans' preference statutes is obviously to give veterans a preferred status for employment purposes, it is tempting to accept Mr. Dyer's argument that "justifiable cause" as used in this context means a physical or mental disability that renders the veteran unable to properly perform the prescribed duties for the position. However, as the majority opinion concludes, such an interpretation is contrary to the canons of statutory construction.

In the absence of a legislative definition of "justifiable cause," and in view of the deference granted to agencies in personnel matters that do not involve suspect classifications, it appears that any realistic, non-frivolous reason for failing to employ the veteran may be "justifiable cause." If our interpretation gleaned from the phrasing and structure of the statutes, is incorrect, or too broad, a legislative definition of the term "justifiable cause" would be appropriate.