CITY OF BISMARCK, Appellee,

v.

Eugene SANTINEAU, Appellant,

and

The Department of Veteran's Affairs, Respondent.

Civ. No. 930175.

Supreme Court of North Dakota.

Dec. 2, 1993.

Charles C. Whitman, City Atty., Bismarck, for appellee.

Deborah J. Carpenter, Carpenter Offices, Bismarck, for appellant. Appearances by Kathleen J. Hall and Eugene Santineau.

VANDE WALLE, Chief Justice.

Eugene Santineau appealed from a judgment of the district court vacating an administrative hearing officer's order that the City of Bismarck employ Santineau under the state's "veterans' preference" statute, section 37–19.1–02, NDCC. We affirm.

Santineau, a veteran, was one of six applicants Bismarck examined, in an interview format, in October of 1992 for the position of Water Plant Operator I. The six applicants had been referred to Bismarck by Job Service of North Dakota, which had given the individuals an aptitude test and found each to possess the minimum qualifications required for the position. At the interview, a panel of four Bismarck public works and water treatment personnel asked the applicants a series of questions relevant to the position. The applicants could receive up to five points for each interview question, and the questions were weighted in light of their over-all importance. Each of the applicants was asked the same questions in the same order and by the same members of the panel. After the interviews, the members of the panel further scored the applicants in the areas of education, skills, experience, self-confidence, appearance and poise, and communication skills.

The members of the panel individually compiled total scores for each applicant based on the interview and post-interview evaluation scores. Each panel member added five points to Santineau's score pursuant to the veterans' preference statute, and the applicants were then ranked by each member of the panel based on the total scores. Santineau, ranked sixth by three members of the

panel and fifth by the fourth member, was informed that he would not be extended an offer for the job. Two other applicants, whose scores and rankings were higher than those of Santineau, also were not extended job offers but were notified by the city that "[a]s a finalist in the running for this position, we will definitely keep you in mind should there be another Water Plant Operator I position open within the year."

Santineau appealed the City's hiring decision to the Department of Veterans Affairs (DVA) and a hearing was held on November 20, 1992. Santineau argued, and the DVA hearing officer agreed, that the hiring procedures employed by the City did not conform to the strictures of subsection (4) of NDCC

§ 37–19.1–02.[1] Specifically, the hearing officer concluded that

"[t]he City did not maintain a register of persons eligible for employment from which it could certify a prescribed number of names for the position of Water/Wastewater Plant Operator I. Therefore, the provisions of § 37–19.1–02(4) do not apply. Because the position applied for was not maintained under a personnel system using a certified list of eligible persons, § 37–19.1–02(2) is the correct application of the law in this instance."

Because Santineau was a veteran and met the minimum qualifications for the position, the hearing officer concluded that subsection (2) of NDCC § 37–19.1–02 required his em-

1. Section 37–19.1–02, NDCC, prior to a 1993 amendment, provided in relevant part:

"Public employment preference to veterans—Residency requirements.

\* \* \* \* \* \*

2. When a veteran applies for appointment or employment under subsection 1, the officer, board, or person whose duty it is to appoint or employ a person to fill the available position shall, except where the veteran has been qualified for the position applied for under a personnel system, investigate the qualifications of the veteran. If the veteran is found to possess the qualifications required for the position applied for, whether educational or by way of prior experience, and is physically and mentally able to perform the duties of the position applied for, the officer, board, or person shall appoint or employ the veteran.

\* \* \* \* \* \*

4. Notwithstanding the preference provisions in subsections 1, 2, and 3, public employment preference for veterans by agencies or governmental agencies, as defined herein, which now have, or which may hereafter have, an established personnel system *under which it maintains a register of persons eligible for employment and from which it certifies a prescribed number of names to that particular agency or governmental agency, must be* governed by the following:

a. No distinction or discrimination may be made in the administration of the examination because the applicant may be a veteran.

b. Upon completion of the examination with a passing grade, the applicant must be informed of a veteran's rights to employment preference as hereinafter provided.

c. The applicant must be required to furnish proof of his status as a veteran and, if disabled, proof of his disability, as defined herein.

d. Upon receipt of proof required in subdivision c, the examiner shall add five points for a nondisabled veteran and ten points for a disabled veteran to the examination grade of the applicant, and the total is the veteran's examination grade.

e. Upon request for the prescribed number of eligible persons from the eligibility registry, such number of eligible persons must be certified from the top number of eligible persons and with such certified list of eligible persons there must also be submitted a statement as to which of those so certified are veterans, disabled veterans, or nonveterans.

f. In the event the certified list of eligible persons includes either veterans or disabled veterans, the appointing or employing authority of that particular agency or governmental agency shall make a selection for the available position as follows:

\* \* \* \* \* \*

(3) When such certified list of eligible persons includes nonveterans and veterans, but not disabled veterans, then the one with the highest examination grade, whether a nonveteran or a veteran, is first entitled to the position and, in the absence of justifiable cause, must be so appointed or employed; and if the one with the highest examination grade is a veteran and is not appointed or employed, there must be justifiable cause documented in writing for not making such appointment or employment." (Emphasis Added).

The 1993 amendment, 1993 N.D. Laws ch. 363, removed from subsection (4) the text underlined above and at issue in this case. This amendment appears to have been in direct response to the DVA ruling in this case. Although the original version of the statute is at issue in this case because the controversy arose prior to the amendment, the amendment may provide insight into the correct construction of the prior statute. *See State ex rel. Spaeth v. Eddy Furniture Co.*, 386 N.W.2d 901 (N.D.1986).

ployment. The hearing officer ordered that Santineau be immediately employed by the City.

Bismarck appealed from the DVA's Order. Reversing, the district court found that Bismarck did have an "established personnel system" under which it maintained a register of persons eligible for employment, within the meaning of section 37–19.1–02, NDCC. Thus, the court concluded, Santineau received the statutory preference due him when five points were added to his evaluation score. *See* NDCC § 37–19.1–02(4). After having awarded Santineau the five-point veterans' preference, Bismarck was permitted to hire the highest scoring applicant; Santineau was not the highest scoring applicant. Judgment was entered in favor of Bismarck and Santineau appealed.

Review by this court of agency determinations is governed by chapter 28–32, NDCC. Pursuant to this chapter, we examine the record of the administrative agency rather than the findings of the district court. *Wiederholt v. Dept. of Transp.*, 462 N.W.2d 445 (N.D.1990). We affirm a hearing officer's decision if the officer's findings of fact are supported by a preponderance of the evidence, the officer's conclusions of law are supported by the findings of fact, the officer's decision is supported by the conclusions of law, and the officer's decision is in accordance with the law. NDCC §§ 28–32–21, 28–32–19; *Dyer v. N.D. Dept. of Human Services*, 498 N.W.2d 160 (N.D.1993).

■ In this appeal, however, our interpretation of section 37–19.1–02, NDCC, will determine under which subsection Santineau was entitled to preference. Interpretation of a statute is a question of law. *Dyer, supra.* In an appeal from an administrative agency decision in which construction of a statute is at issue, our obligation, as it is in other appeals in which construction of a statute is at issue, is to fulfill the object and intent of the legislature. *Johnson v. N.D. Workers' Comp. Bureau*, 484 N.W.2d 292 (N.D.1992). "Statutes must be construed as a whole to determine the intent of the legislature, deriving that intent by taking and comparing every section as a part of a whole." *Id.* When the language of a statute is ambiguous or of doubtful meaning, we may look beyond the letter of the statute to ascertain legislative intent. *County of Stutsman v. State Historical Soc.*, 371 N.W.2d 321 (N.D.1985).

■ In *Dyer, supra*, this Court for the first time construed the provisions of section 37–19.1–02, NDCC. We explained that subsections (2) and (4) of NDCC § 37–19.1–02 establish separate and distinct veterans' preference guidelines, based on whether or not the government entities have established personnel systems. Subsection (2), which provides that the government entity "shall appoint or employ the veteran" if the veteran is qualified for the position, applies to entities without established personnel systems. Subsection (4) applies to entities that have established personnel systems and requires preference to be in the form of additional points added to a veteran's score prior to ranking the applicants.

■ "Personnel system" is defined in section 37–19.1–01, NDCC, as "a personnel system based on merit principles." The legislature has not defined "merit principles"; we construe the term in its ordinary sense, with consideration given to the context of its use and the purpose prompting its enactment. *Dyer, supra.* Webster's New World Dictionary, Second College Edition, defines "merit" as

"1. the state, fact, or quality of deserving well or, sometimes, ill; desert 2. worth; value; excellence 3. something deserving reward, praise, or gratitude 4. a reward or honor given for superior qualities or conduct; mark, badge, etc. awarded for excellence."

Thus a "personnel system based on merit principles" is competitive in nature; the objective in such a system is to employ the most worthy applicant.

■ Santineau argues that Bismarck's personnel system was not merit-based, because the interviewers scored the applicants on subjective criteria and on subjective impressions formed during the interview. We understand Santineau to argue that, by definition, a merit-based system must utilize wholly objective means of scoring. While Santineau's argument is persuasive in theory,

it may be unworkable in practice; it may be impossible to formulate a standard by which meritorious qualities are defined or measured with entire objectivity.

■ Considerable judicial deference must be afforded a hiring body in its assessment of whether, to what extent, and in what manner merit should be measured. *Dyer, supra; McGowan v. Burstein,* 71 N.Y.2d 729, 530 N.Y.S.2d 64, 525 N.E.2d 710 (1988). We agree with the Court of Appeals of New York, which stated,

"The law does not require the impossible or forbid the reasonable. The record discloses that here the examiners have based determination upon their estimates of qualities which, it is reasonably clear, affect the merit and fitness [for the position.] ... Much must be left here to the judgment of the examiners. The test cannot be wholly objective and to the extent that it is subjective the result may depend as much upon the fitness of the examiners as upon the fitness of the candidate. That is a risk inherent in all systems of examination."

*Sloat v. Board of Examiners,* 274 N.Y. 367, 9 N.E.2d 12, 15 (1937); *see also, Stoor v. City of Seattle,* 44 Wash.2d 405, 267 P.2d 902 (1954) [oral conferences, which may involve grading upon subjective impressions of intangible qualities, were sufficiently objective and "competitive"; their use by civil service commission for fire department promotions held to be permissible]; *Almassy v. Los Angeles County Civil Service Commission,* 34 Cal.2d 387, 210 P.2d 503 (1949) [oral examinations and post-interview evaluations on such characteristics as appearance, voice and speech, alertness, judgment, poise, social adaptability and interest in job held to be valid and acceptable aspects of "open", "impartial" and "competitive" civil service promotional examinations].

The record supports Bismarck's contention that the applicant who was selected for the position of Water Plant Operator I was hired on merit principles; he was determined to be the most deserving of the position based on superior qualities and credentials relative to the position. While the scoring process did reflect some subjectivity, we defer to Bismarck's judgment in assessing the qualities required for the position.

■ Bismarck's personnel system is "established" under chapter 9–03 of the Bismarck Code of Ordinance. City Ordinance section 9–03–08 requires competitive examinations and qualification-based hiring. The legislative history of section 37–19.1–02, NDCC, reveals that the legislature considered Bismarck to be an example of an entity operating under an "established personnel system" as defined by the statute. *See* Minutes of Veterans Affairs Committee of House on Senate Bill 2113, Prepared Testimony of William Williamson, January 30, 1973. Because subsection (2) governs entities that do not have established merit-based personnel systems, *see Dyer, supra,* that subsection is not applicable to Bismarck.

■ The hearing officer nonetheless concluded that, whether or not Bismarck had an established merit-based personnel system as described elsewhere, in this instance Bismarck's system did not fit the description of "personnel system" in subsection (4), because it did not maintain a register of persons eligible for employment. We disagree.

Governmental agencies are to be accorded discretion in the administration of their personnel systems. *Dyer, supra.* Cities with civil service systems are expressly authorized to adapt them to the size and requirements of the city. NDCC § 40–44–07. Insofar as the maintenance of a register of persons eligible for employment is concerned, the method of selecting the final applicants was not significantly different from that used in *Dyer.* There, Central Personnel received applications and recommended the top applicants to the Department only after the position became vacant; here, Job Service performed a substantially similar function. In light of *Dyer,* therefore, we conclude that maintenance of a register of eligible applicants prior to the vacancy of a position is not essential to a subsection (4) personnel system.

Bismarck examined the applicants and graded them on the basis of over-all qualifications to perform the job. Veterans' preference points were added. The applicants

were listed according to their rankings. Charles Klein, Director of Human Resources for the City of Bismarck, testified that the list of applicants who were not hired would be maintained for one year, pursuant to city ordinance. Consistent with *Dyer*, and giving due deference to Bismarck's authority to adapt its system to its needs, we conclude that Bismarck complied with subsection (4).

Santineau was afforded preference points, yet even with the points did not rank highest among the applicants. Section 37–19.1–02, NDCC, does not require that Santineau be employed, nor that the City further demonstrate cause for not hiring him.

The judgment of the district court, reversing the judgment of the DVA hearing officer, is affirmed.

MESCHKE, SANDSTROM, NEUMANN and LEVINE, JJ., concur.