Donald LIPPERT, Appellant,

v.

**GRAND FORKS PUBLIC SCHOOL DISTRICT, Appellee.**

Civ. No. 930251.

Supreme Court of North Dakota.

Feb. 23, 1994.

Deborah J. Carpenter, Carpenter Offices, Bismarck, for appellant; submitted on briefs.

Patrick W. Fisher, McConn, Fisher, Olson & Daley, Grand Forks, for appellee; submitted on briefs.

VANDE WALLE, Chief Justice.

Donald Lippert appealed from a district court judgment affirming a hearing officer's decision that the Grand Forks Public School District complied with the Veterans' Preference statute, section 37–19.1–02, NDCC, when it failed to employ Lippert. We affirm.

On July 1, 1992, the Special Education Unit of the Grand Forks Public School District (School District) received a grant from the North Dakota Department of Public Instruction to start a pilot project, in which the Special Education Unit would "coordinate and implement ... Technical Assistance activities for the 1992–1993 school year." Under the project, two Technical Assistance Coordinators would be hired "to provide technical assistance services to the thirty school districts within the region along with some state level compliance monitoring and special project activities." Essentially, the Coordinators would assist and monitor teachers of special education and orchestrate special education projects.

A job description for the Technical Assistance Coordinator positions was prepared by the Department of Public Instruction (DPI) and sent to Frank Miller, Director of Special Education for the School District. The job description listed the qualifications as follows: "Masters degree in special education, education or a related field preferred. *Three*

*years experience in special education or a related field."* (Emphasis added).

The School District published an advertisement for the positions in a regional newspaper. The advertisement listed the duties involved in employment, the deadline for application, where to apply, and the names and phone numbers of persons to reach for more information. However, in the advertisement, the qualifications for the positions were described differently than as delineated in the job description prepared by the DPI. The advertisement read as follows: "Qualifications: Master's degree in special education, education or a related field with *three years experience preferred."* (Emphasis added). Thus it appeared from the newspaper advertisement that three years of experience in "special education or a related field" was not required, and that experience in general education would also be preferred.

Donald Lippert, a disabled war veteran, applied. Lippert's application included his resume, his letter of application, a letter from the Department of Veteran's Affairs confirming his status as a disabled veteran, and a copy of the report of his honorable discharge from the armed forces. Lippert's resume and letter of application indicated that he had one year of experience as a secondary school principal and six years of experience teaching Vocational Agriculture and science. Lippert has a Bachelor of Science degree in Agricultural Education and a Master's degree in Education Administration. Lippert's graduate thesis concerned the education of gifted and talented students.

The School District notified Lippert by mail that he had not been selected for an interview and that two applicants had accepted offers for the positions. The School District did not specify the reasons Lippert had not been selected.

In accordance with section 37–19.1–04, NDCC, Lippert requested the Department of Veteran's Affairs to hold an administrative hearing to determine whether or not Lippert had been given veterans' preference as required by section 37–19.1–02, NDCC. The Department of Veteran's Affairs informed the Office of Administrative Hearings on August 18, 1992, that Lippert had requested a

hearing on the matter, and a hearing was scheduled for August 28, 1992. On August 26, 1992, however, Frank Miller of the School District contacted the hearing officer and protested the naming of the School District as the employer and party to the action. The hearing officer postponed the hearing until it could be determined whether the hiring authority was the School District or whether it was the Department of Public Instruction, since the DPI had granted the School District the money to finance the project and had prepared the job description. The hearing was eventually held on November 19, 1992, and the School District stipulated that it was to be considered the hiring authority.

The hearing officer determined that veterans' preference was generally applicable to the Technical Assistance Coordinator positions,[1] but that the School District was not required to afford Lippert a preference because Lippert did not meet the required qualifications for the position. Lippert appealed the decision to the district court, which affirmed.

Lippert asserts that he was qualified for the positions, that the School District failed to investigate his qualifications as required under section 37–19.1–02, NDCC, and that the hearing officer erred in failing to find accordingly. Lippert also contends that the hearing officer erred by permitting the School District to challenge Lippert's qualifications for the positions at the hearing and that Lippert was prejudiced by having the hearing delayed beyond the fifteen-day time limit prescribed by statute.

Our review of agency determinations, including the decision of a hearing officer, is governed by chapter 28–32. Under that chapter, we will affirm the agency decision if the findings of fact are supported by a preponderance of the evidence, the conclusions of law are supported by the findings of fact,

the decision is supported by the conclusions of law, and the decision is in accordance with the law. NDCC §§ 28–32–19, 28–32–21; *Dyer v. N.D. Dept. of Human Services,* 498 N.W.2d 160 (N.D.1993). We look only to the decision of the hearing officer and to the evidence in the record; we do not review the findings and conclusions of the district court. *S.N.S. v. Dept. of Human Services,* 474 N.W.2d 717 (N.D.1991).

## I

Both parties agree that the School District does not hire employees under an "established personnel system", as defined in subsection (4) of section 37–19.1–02, NDCC.[2] *See City of Bismarck v. Santineau,* 509 N.W.2d 56 (N.D.1993); *Dyer, supra.* Subsection (2), which applies to hiring authorities without an established personnel system, thus controls this matter. NDCC § 37–19.1–02. Subsection (2) provides, in relevant part:

> "the officer, board, or person whose duty it is to appoint or employ a person to fill the available position shall, ... investigate the qualifications of the veteran. If the veteran is found to possess the qualifications required for the position applied for, whether educational or by way of prior experience, and is physically and mentally able to perform the duties of the position applied for, the officer, board, or person shall appoint or employ the veteran."

Lippert contends that the hearing officer erred in finding that Lippert did not possess the requisite qualifications for the positions. Lippert maintains that the qualifications were identified in the newspaper advertisement, despite the job description and testimony of Frank Miller that three years of experience in "special education or a related field" is required.

█ In *Santineau, supra,* we stated that considerable deference must be afforded the

---

1. Specifically, the hearing officer concluded that the position was not a teaching position. Employers considering applicants for teaching positions are not required to afford preference to veterans. NDCC § 37–19.1–02(5).

2. "Established personnel systems" typically involve a point system as a means of determining

the most qualified applicant. *City of Bismarck v. Santineau,* 509 N.W.2d 56 (N.D.1993); *Dyer v. N.D. Dept. of Human Services,* 498 N.W.2d 160 (N.D.1993). Veterans' preference under an "established personnel system" takes the form of additional points added to the score of the veteran. NDCC § 37–19.1–02(4).

hiring authority in its determination of whether and to what extent an applicant possesses the meritorious qualities required for the position. We believe the same deference is due the School District and the DPI in their determination of the qualifications required for the Technical Assistance positions. There was considerable evidence at the hearing that the qualifications listed in the newspaper advertisement were not in accord with the required qualifications for the position as envisioned by the School District and the DPI; the record supports the hearing officer's finding that the qualifications for the positions were those enumerated in the job description rather than those in the newspaper advertisement. The record supports the hearing officer's finding that the positions required three years of experience in special education or a related field.

■ Lippert contends that he did have three years of experience in "a related field". To wit, Lippert had six years of secondary teaching experience, one year of experience as a principal, and the experience gained in researching and writing his graduate thesis on gifted and talented students. Representatives of the School District testified, however, that "a related field" did not include general secondary education, but rather included only those fields in which a person could be certified by the DPI in special education. According to the testimony of Frank Miller, those fields may include physical therapy, occupational therapy, speech therapy, school psychology and social work. Also, the job description distinguished education from "a related field" by providing, "Masters degree in special education, education or a related field preferred." Giving due deference to the hiring authority in setting the qualifications for the position, we conclude that the record supports the hearing officer's finding that Lippert did not have the required experience for the position.

Lippert also asserts that the School District failed to "investigate the qualifications of the veteran." NDCC § 37–19.1–02(2). The evidence indicates that, regardless of whether or not the School District had requested and received more information regarding Lippert's credentials, he did not

have three years of experience in special education or a related field. There is no evidence, nor does Lippert argue, that the School District ignored his application; the evidence supports the hearing officer's finding that the School District reviewed the application materials that Lippert had submitted and found that he did not have the requisite qualifications.

■ Lippert contends that the School District should not have been permitted to challenge his qualifications for the position at the hearing. Also, Lippert asserts, the School District should have been required to enumerate the short-comings in his application when it notified him that he would not be extended an offer for one of the positions.

The veterans' preference statute places the burden on the employer to establish that the veteran was not qualified. Testimony regarding the lack of the veteran's qualifications is probative and oftentimes necessary if the employer is to meet its burden. The statute does not require that the veteran be informed of the employer's reasons for finding the veteran unqualified prior to the hearing, nor that the employer is precluded from presenting evidence at the hearing that the veteran was not qualified. The record supports the hearing officer's findings.

## II

■ Section 37–19.1–04(3), NDCC, provides that, upon a proper request for an administrative hearing regarding veterans' preference, "The hearing officer shall hold the hearing within fifteen days after the hearing is requested by the commissioner of veterans' affairs." Lippert contends that the fifteen-day time restriction is mandatory and that he was prejudiced by the hearing officer's failure to hold the hearing within the statutory time limit.

■ Ordinarily, the word "shall" in a statute creates a mandatory duty. *Homer Tp. v. Zimney*, 490 N.W.2d 256 (N.D.1992). However, where necessary to effect the intent of the legislature, the word "shall" will be interpreted as creating a duty that is merely directory. *Solen Public School Dist. No. 3 v.*

*Heisler,* 381 N.W.2d 201 (N.D.1986). In *Solen,* we explained,

"The mandatory-directory dichotomy relates to whether the failure to perform a duty will invalidate subsequent proceedings. If the prescribed duty is essential to the main objective of the statute, the statute is mandatory and the failure to comply with it will invalidate subsequent proceedings; however, if the duty is not essential to accomplishing the main objective of the statute but is designed to assure order and promptness in the proceeding, the statute is directory and the failure to comply with it will not invalidate subsequent proceedings.

"Statutory provisions concerning the performance of duties by public officers within a specified time are generally construed to be directory so that the interests of private parties and the public will not be injured because of the delay. That result is premised on grounds of policy and equity to avoid harsh, unfair, or absurd consequences when a mandatory construction may do great injury to a party not at fault. Thus, in order to protect all interests involved, courts employ a balancing test to determine whether prejudice to a party caused by the delay is outweighed by the interests of another party or the public in allowing the act to be performed after the statutory time period has elapsed." 381 N.W.2d at 203–04 (citations omitted).

The apparent purpose of section 37–19.1–04, NDCC, is to ensure proper enforcement of the veterans' preference by affording aggrieved veterans the opportunity to be heard and by permitting the hiring body to attempt to demonstrate that its hiring process complied with the statutory directive. The fifteen-day time restriction, we believe, is designed to assure an orderly and prompt resolution of the matter, and "generally reflects the legislature's view as to the proper time frame in which the agency should act[;] we cannot read into the statute the intent to deny the agency the power to act beyond that time should exigencies require it to do so." *Sheet Metal Contractors v. Com'r of Ins.,* 427 N.W.2d 859, 865 (Iowa 1988).

Lippert contends, however, that the confusion concerning who was the hiring authority was created by the School District itself, and that Lippert alone was prejudiced by the delay. Lippert suggests the possibility that "some of the undated materials introduced [by the School District regarding requisite qualifications] and relied upon by the hearing officer would not have been available" had the hearing been held as originally scheduled. Presumably, the "undated materials" to which Lippert alludes included the job description prepared by the DPI, which specifies the requirement of three years experience in special education or a related field. Also, there was some disagreement regarding what materials Lippert had submitted with his application; Lippert also suggests that the materials in his file may have been lost or destroyed during the delay, and argues that the recollection of the witnesses regarding his application would have been more fresh at an earlier date.

In essence, Lippert contends that the statutory time restriction should be considered mandatory because the School District is not "a party not at fault" and that the harsh consequences of the delay fell upon him alone. *See Solen, supra,* at 204. Thus, weighing the interests of the parties, Lippert asserts that equity requires that the School District employ him because of the hearing officer's failure to hold the hearing within the statutory time limit. We disagree.

Testimony at the hearing indicates that the job description was prepared prior to receiving applications for the positions. Lippert's belief that the document may have been created after the fact and in light of pending litigation is unsubstantiated. Similarly, the record does not support Lippert's assertion that he was prejudiced by the School District's alleged failure to retain documents from Lippert's application file. Regardless of what documents Lippert believes were missing from his original application file, Lippert did not have three years experience in Special Education or a "related field", as that term was defined by the School District. The evidence would not support a finding that Lippert was prejudiced, whether or not materials in Lippert's application file were

lost or destroyed and whether or not the memory of the witnesses had faded because of the delay. The record reveals that Lippert would have been unsuccessful in this matter had the hearing been held on an earlier date.

Lippert further contends that he was prejudiced because two people were hired for the positions before the hearing was held. However, had Lippert been entitled to one of the positions, the law, section 37–19.1–04, NDCC, requires that he be employed. We conclude that he was not prejudiced by the delay.[3]

The judgment of the district court, affirming the decision of the hearing officer, is affirmed.

SANDSTROM, MESCHKE, LEVINE and NEUMANN, JJ., concur.

---

**3.** We do not condone the delay in this case. The confusion as to the identity of the employer might have caused some delay, but a three-month delay is unwarranted. Although no actual prejudice is apparent on this record, it is obvious that a delay may cause prejudice in a given case. Furthermore, we believe an applicant is entitled to a writ ordering the hearing be held within the statutorily prescribed time or as quickly as possible thereafter, should similar delays occur in the future.