No. 88-69

IN THE SUPREME COURT OF THE STATE OF MONTANA

1988

BRIAN S. OLSON,

        Petitioner and Appellant,

   -vs-

STATE OF MONTANA, DEPARTMENT OF REVENUE,
and JOHN NICOLAY, Supervisor,

        Respondents.

APPEAL FROM: District Court of the Fifth Judicial District,
In and for the County of Beaverhead,
The Honorable Thomas Olson, Judge presiding.

COUNSEL OF RECORD:

    For Appellant:

        Kozakiewicz Law Office; Vincent J. Kozakiewicz argued,
        Dillon, Montana

    For Respondent:

        Larry Schuster argued, Dept. of Revenue, Helena,
        Montana

Submitted: September 12, 1988

Decided: December 1, 1988

Filed:

FILED '88 DEC 1 PM 2 32
MONTANA SUPREME COURT

_Ethel M. Harrison_
Clerk

Mr. Justice Fred J. Weber delivered the Opinion of the Court.

Mr. Olson filed a petition in the District Court for the Fifth Judicial District, Beaverhead County, alleging that the Department of Revenue (DOR) denied him his right to veterans' and handicapped persons' preference in employment. After a hearing, the court determined that Mr. Olson was not entitled to application of the preference because he was not substantially equally qualified with the successful job applicant. Mr. Olson appeals. We affirm.

We restate the issues as 1) whether the DOR erred in considering application of the preference only after using its objective scoring system to evaluate the applicants, and 2) whether the DOR and the District Court properly concluded that Mr. Olson was not substantially equally qualified with the successful applicant.

Mr. Olson applied for a job as an appraisal clerk with the DOR in Dillon, Montana, claiming a preference in hiring under the Montana Veterans' and Handicapped Persons' Employment Preference Act (Act). Mr. Olson's right to claim a preference has not been questioned. The DOR used an extensive objective scoring system for rating the 56 applicants for the position. The scoring system had three subsections: the applications, written examinations, and oral interviews. The applicants who received the top 17 point scores based on their applications were asked to sit for written examinations. Mr. Olson was one of these. Then the persons with the top 12 point scores on the written exams were orally interviewed. Mr. Olson was orally interviewed. The candidates were given point scores by each of the three interviewers and the three scores were averaged. These scores were added to the scores on the applications and the written exams. The scoring system awarded up to 97 points for the

applications, up to 78 points for the written examinations, and up to 90 points for the oral interviews.

The applicant with the highest total score had a total of 219 points. The second-place applicant had a total score of 213.2 and Mr. Olson's total score was 201.6. After the point scores were totaled, the DOR determined that there was no tie or close grouping of applicants justifying application of the veterans' and handicapped persons' preference on Mr. Olson's behalf. When the job was given to the top-scoring applicant, Mr. Olson went to District Court, arguing that the rating system used by the DOR denied him his right to a preference in hiring. He now appeals the District Court's determination that he was not entitled to preference in hiring.

I

Did the DOR err in considering application of the preference only after using its objective scoring system to evaluate the applicants?

Mr. Olson contends that the scoring procedure used by the DOR did not give proper effect to the preference to which he was entitled. He argues that the preference should have been considered prior to use of the scoring system, and that consideration of the preference only after applying the scoring system renders the preference statute void.

In 1983, this Court defined the nature of Montana's veterans' and handicapped persons' preference under the statutes then in effect. Crabtree v. Montana State Library (1983), 204 Mont. 398, 665 P.2d 231. The Court adopted the lower court's opinion that the then-existing statute gave "Montana veterans and disabled civilians who meet the minimum qualifications for a state, county or municipal job an absolute preference over all other non-veterans or non-disabled civilians." Crabtree, 665 P.2d at 234.

3

In December of 1983, the Montana Legislature met in special session. During that session, it amended the employment preference statutes to their present form. In introducing this legislation, its sponsor set forth a statement of intent which included the following:

> A statement of intent is provided to address the nature of the employment preference granted in the bill. The legislature intends that public employers seek and hire the most qualified persons for positions in public employment. It is also the intent of the legislature that the nature of the preference is a relative one in that it is to be applied as a "tie-breaker" among two or more applicants for a position who have substantially equal qualifications. Substantially equal qualifications does not mean a situation in which two or more applicants are exactly equally qualified. It means a range within which two applicants must be considered to be substantially equal in view of the qualifications set for the job. Qualifications should include job-related knowledge, skill, and abilities. The legislature recognizes that public employers use a variety of scored and unscored selection procedures such as conventional written examinations, training and experience requirements, performance tests, structured oral interviews, or combinations of these. The legislature does not intend to specify the type of selection procedure to be used by a public employer.

The word "tie-breaker" was deleted in committee. However, the minutes of the committee meetings of the Judiciary Committees of both the Senate and the House demonstrate considerable dissatisfaction with the absolute preference accorded under Crabtree.

Title 39, Chapter 30, MCA, the resulting Act, provides at § 39-30-201, MCA, that a job applicant who is a veteran or handicapped person and claims the right to a preference is entitled to be hired "over any other applicant with substantially equal qualifications who is not a preference eligible

4

applicant." The term "substantially equal qualifications" is defined at § 39-30-103(9), MCA:

> "Substantially equal qualifications" means the qualifications of two or more persons among whom the public employer cannot make a reasonable determination that the qualifications held by one person are significantly better suited for the position than the qualifications held by the other persons.

We must presume that in amending the preference laws, the Legislature intended to make some change in the existing law. Mont. Dept. of Rev. v. Am. Smelting & Refining (1977), 173 Mont. 316, 325, 567 P.2d 901, 906. We conclude that in amending the veterans' preference statutes, the Montana Legislature meant to abolish the absolute employment preference for veterans and handicapped persons who possess the minimum qualifications for a job. Being minimally qualified for the job is no longer enough.

Additionally, the Legislature did not limit the hiring authority to any particular method of assessing job applicants' relative qualifications. The assertion that the DOR never took a look at the relative qualifications of Mr. Olson and the successful applicant ignores the comparison by use of the point system. We conclude that the DOR gave proper effect to the statutes in first determining applicants' point scores, then considering whether the preference should be applied.

II

Did the DOR and the District Court properly conclude that Mr. Olson was not substantially equally qualified with the successful applicant?

Section 39-30-207(3)(a), MCA, sets forth the burden of proof in an action such as this one:

> Upon filing of the petition, the court shall order the public employer to appear in court . . . and

5

show cause why the applicant was not hired for the position. At the hearing, the public employer has the burden of proving by a preponderance of the evidence that the employer made a reasonable determination [of substantial equal qualifications] . . . .

The specific objections made by Mr. Olson to the point score he was awarded relate to the application portion of the scoring procedure. The applications of Mr. Olson and the successful applicant were in evidence before the District Court. The job they were applying for was a clerical position in the county appraisal office. The successful applicant had worked for 10 years as an operations assistant for an agricultural lender and for 4 years as a bank teller. As the District Court found, "clerical work is not the central theme of [Mr. Olson's] work experience." Mr. Olson's application shows that he has worked as a surveyor aide for the U.S. Forest Service and a private engineering firm, a crew leader for a scout section of the National Guard, a maintenance worker, a ranch hand, a boiler operator, a logger, a board edger, and a warehouseman.

In view of Mr. Olson's argument that the DOR acted unreasonably in scoring his application for employment, we quote from parts of the trial transcript. Mr. Nye, who was responsible for scoring the applications testified as follows:

Q. Now, Mr. Nye, what I would like to do is to take you through your analysis of Mr. Olson's employment application, if I may. . . .

Would you explain for the Court how you determined that Mr. Olson should have sixteen points for education?

A. Because he had a high school diploma, which gave him eight points; and he had four years

6

of college, which gave him another eight, for a maximum of sixteen.

. . .

Q. The third column is entitled "clerical office experience". Would you explain to the Court why Mr. Olson was given six points for that?

A. He was given six points based on two points per year for his time in the military in which his application indicated he had clerical experience all three years.

Q. Mr. Olson was awarded four points for deeds and property description experience. Why did he get four points for that?

A. He had some surveying experience and we -- from his application it indicated that he had about a year's experience on that in which he would be working with deeds and legal property descriptions.

Q. Mr. Olson received twelve points for typing experience; am I reading that correctly?

A. No.

Q. For mapping experience. Why did he receive that?

A. In his years as a surveyor he would receive the points for one year at least there. And he'd had some mapping experiences indicated in locating mining claims and various private properties, so I gave him extra points for that.

Q. Mr. Olson was afforded four points for typing experience. Would you explain that?

A. Four is all I could get out of his application, which would be four points per year would be about one year was all I could find on his application that indicated he was doing actual typing.

Q. And with respect to calculator experience, have you given him any credit for that?

7

A. Yes, I've given him four points for calculator experience based on the fact that he was probably using a calculator during his surveying.

Q. And then there's a column entitled "other office machine experience"; do you see that?

A. Yes, sir.

Q. And would you tell the Court what that pertains to, please?

A. Either they would have experience along some sort of computer or other office machine. None was indicated on his application; and therefore, I could give him no points.

. . .

Q. Now, did you screen the initial employment application form for Ms. Cindy Doering?

A. Yes, I did.

Q. And I'd like to have you go through your examination and scoring of her employment application form in the same fashion that we did for Mr. Olson. . . . Why was Ms. Doering given ten points for education?

A. She had her high school diploma plus one year at Western Montana College.

Q. And she received six points for clerical office experience. Why did she receive that?

A. She was employed in a clerk and secretary position both with the -- well, with the Federal Land Bank, which was the maximum I could give her.

Q. And she has twelve points for deeds and property experience. How did you achieve that rating?

A. She had eight to ten years of experience with the Land Bank in which she was doing deeds and property descriptions in there as well. And I was able to give her the maximum, which was twelve points.

8

Q. And why was she afforded twelve points for mapping experience?

A. It would be the same program. She'd had the experience over there at the Land Bank.

Q. Why did she receive eight points for typing experience?

A. Because in her job at the Land Bank she was also typing up all these descriptions and doing the secretarial work there. And she had more than the two years experience.

Q. And would you tell the Court why she was given eight points for calculator experience?

A. Because in her figuring of acreages and so forth in all the years that she was at the Land Bank she had a maximum there.

Q. And finally, why was she afforded six points for other office machine experience?

A. There was two other machines that she indicated in her application that she was using at the Land Bank office for which she was allowed the six points.

Based on our review of the record, we hold the District Court did not abuse its discretion in concluding that the DOR's scoring procedure was reasonable.

Mr. Olson argues that this position was advertised as entry-level with possible on-the-job-training and that he was substantially equally qualified for a position of that description with the successful applicant. But the determination of substantially equal qualifications is not limited to the qualifications set forth in the position advertisement:

> Hamner contends, however, that the criteria for judging applicants for the position at issue is contained solely in the advertisement . . . soliciting proposals, and that the only criteria in the advertisement for judging applicants is that they be attorneys. We disagree. The advertisement

9

solicits proposals demonstrating the applicant's ability to provide extensive legal services for the County. An analysis of that ability, rather than the advertisement itself, constitutes the criteria for judging an applicant's qualifications for the position. Here, substantial evidence supports the District Court's finding that the County correctly determined that Hamner's qualifications were not substantially equal to the firm awarded the contract. Thus, this contention fails.

Hamner v. Butte-Silver Bow County (Mont. 1988), 760 P.2d 76, 79-80, 45 St. Rep. 1481, 1485. We conclude that where Mr. Olson's total point score was 201.6 and the successful applicant's was 219 and where the record supports that difference in scores, the District Court did not err in ruling that the DOR met its burden of proving that Mr. Olson and the successful applicant were not substantially equally qualified. This is not to say, as Mr. Olson claims, that in order to be eligible for the preference, he would have to have been the top-scoring applicant. We hold that the conclusion that Mr. Olson was not substantially equally qualified with the successful applicant does not represent an abuse of discretion.

Affirmed.

_____
Justice

We Concur:

_____
Chief Justice

_____

_____

_____
Justices

10

Mr. Justice John C. Sheehy, dissenting:


The majority has given the statehouse gangs a blueprint on how to avoid the veterans' preference in job hiring. Simply parse the experience of the favored non-veteran into as many segments as needed, and award each segment the maximum points.

The successful applicant here was employed for ten years as an "operations assistant" at the local office of the Federal Land Bank. She did clerical and stenographic work. For that experience her job was segmented as follows:

| | |
|---|---|
| Clerical office experience | 6 points |
| Deeds and property descriptions | 12 points |
| Mapping | 12 points |
| Typing | 8 points |
| Calculators | 8 points |
| Other machines | 6 points |
| Total | 52 points |

Olson had done work as a surveyor, had successfully completed a real estate training course, held a current real estate license for the state of Idaho, and had computer experience. Witness his comparable scoring:

| | |
|---|---|
| Deeds and property descriptions | 4 points |
| Calculators | 4 points |
| Other machines | 0 points |

The "other machines" for which the successful applicant got maximum points were a bank proof machine, a bank posting machine, and a copy machine. The scorers did not include the water cooler, but probably would have if needed. None of these machines is used by an appraisal clerk except the copy machine, the technical difficulty of which can be mastered by a first-grader. The scorers ignored Olson's computer experience.

Having rigged the scores for the successful applicant, the scorers then ignored the law, which declares that if the applicants are substantially equally qualified, the veterans' preference is decisive. Olson could not be hired under the scorers' view unless he had the highest score, but then he would not have to call on his preference rights. Thus is the veterans' preference emasculated.

Olson is not only a Viet Nam veteran, but is also a certified handicapped person. He was entitled to the job on both counts. We should make sure he got it.

_John C. Sheehy_
Justice

I concur in the foregoing dissent of Justice Sheehy.

_William E. Smith_
Justice