No. 99-177

IN THE SUPREME COURT OF THE STATE OF MONTANA

2000 MT 108N

JACK HAMNER,

Petitioner and Appellant,

v.

BUTTE-SILVER BOW COUNTY,

A Political Subdivision of the State of Montana,

and TIM CLARK, Butte-Silver Bow Personnel

Director,

Respondents and Respondents.

APPEAL FROM: District Court of the Second Judicial District,

In and for the County of Butte-Silver Bow,

The Honorable James E. Purcell, Judge presiding.

COUNSEL OF RECORD:

For Appellant:

John Leslie Hamner, Butte, Montana

For Respondent:

Robert M. McCarthy, Silver Bow County Attorney, Eileen Joyce, Deputy Butte-Silver Bow County Attorney, Butte, Montana

---

Submitted on Briefs: November 4, 1999

Decided: April 27, 2000

Filed:

_____

Clerk

Justice William E. Hunt, Sr. delivered the Opinion of the Court.

¶1 Pursuant to Section I, Paragraph 3(c), Montana Supreme Court 1996 Internal Operating Rules, the following decision shall not be cited as precedent but shall be filed as a public document with the Clerk of the Supreme Court and shall be reported by case title, Supreme Court cause number and result to the State Reporter Publishing Company and to West Group in the quarterly table of noncitable cases issued by this Court.

¶2 Jack Hamner (Hamner) appeals from the order and memorandum of the Second Judicial District Court, Silver Bow County, denying his motion for enforcement of a disability preference in public employment against Butte-Silver Bow County (the County). We affirm.

¶3 Although Hamner fails to state any issues in his appellate brief, we agree with the County that this appeal raises two questions:

¶4 (1) Did the District Court properly find and conclude that the County carried its burden of proof that Hamner did not have substantially equal qualifications for the position?

¶5 (2) Did the District Court err in determining that the selection process was not tainted,

unfair, or biased against Hamner?

## Factual and Procedural Background

¶6 On December 18, 1997, the County began to publicly solicit applications for the newly created position of Director of Land Records. Hamner was one of seventeen applicants for the position. A five-member selection committee, consisting of four officials for the County and Delores Cooney, Regional Administrator for the Montana Department of Revenue (Cooney), reviewed the qualifications of the seventeen applicants.

¶7 After reviewing the applications individually, each selection committee member categorized the applicant pool according to three separate "lists": (1) the "A" list represented those applicants that the selection member determined were the most qualified for the position; (2) the "B" list represented those applicants that the selection member determined were the second most qualified for the position; and (3) the "C" list represented those applicants the selection member determined were the least qualified for the position.

¶8 The criterion developed by the County for selecting applicants for interviews consisted of the following: any applicant who was placed on the "A" or "B" lists of at least four selection committee members was granted an interview. Based on that criterion, seven applicants were granted interviews by the County. Hamner failed to make the "A" or "B" lists of any of the selection members and, therefore, was not granted an interview.

¶9 On April 4, 1998, Hamner filed a Petition in the District Court pursuant to § 39-30-207 (2), MCA (1997). Based on that petition, the court scheduled a "Show Cause Hearing," ordering the County to appear and show cause why Hamner was not hired for the position of Director of Land Records. A show cause hearing was conducted on June 5, 1998, during which the District Court heard testimony from the five members of the selection committee. During the hearing, pursuant to agreement of the parties, the court also conducted an "in camera" inspection of all the applications submitted for the position of Director of Land Records. Following the hearing, the parties filed briefs. On January 22, 1999, the District Court issued an "Order Denying Plaintiff's Motion for Enforcement of Preference." From that order, Hamner appeals. Other facts will be set forth as necessary.

## Discussion

¶10 (1) Did the District Court properly find and conclude that the County carried its burden of proof that Hamner did not have substantially equal qualifications for the position?

¶11 Hamner filed his Petition under the "Montana Persons with Disabilities Employment Preference Act," §§ 39-30-101 to -207, MCA (1997) (the Act). In determining whether a public employer has violated a disabled person's rights, the Act provides that the "employer has the burden of proving by a preponderance of the evidence that the employer made a reasonable determination pursuant to 39-30-103(7) . . . ." Section 39-30-207(3)(a), MCA (1997).

¶12 In turn, § 39-30-103(7), MCA (1997), sets forth the following definition:

"Substantially equal qualifications" means the qualifications of two or more persons among whom the public employer cannot make a reasonable determination that the qualifications held by one person are significantly better suited for the position than the qualifications held by the other persons.

Section 39-30-103(7), MCA (1997).

¶13 Finally, the Act furnishes the following employment preference in initial hiring:

Except as provided in 10-2-402, in an initial hiring for a position, if a job applicant who is a person with a disability or eligible spouse meets the eligibility requirements contained in 39-30-202 and claims a preference as required by 39-30-206, a public employer shall hire the applicant over any other applicant with substantially equal qualifications who is not a preference-eligible applicant.

Section 39-30-201(1)(a), MCA (1997).

¶14 It is undisputed that Hamner has a disability making him a preference-eligible applicant under the Act and that he claimed such a preference in applying for the position of Director of Land Records. None of the other applicants selected for an interview by the County possessed a preference-eligible disability. Thus, we must address whether the County carried its burden of showing that its system of ranking the relative qualifications of the applicants for the position of Director of Land Records according to three "lists" constituted a reasonable determination that Hamner did not have substantially equal

qualifications to any of the other applicants who were selected for an interview. If Hamner was not substantially equally qualified, then he is not entitled to enforcement of a preference in public employment pursuant to the Act. In answering that question, we are guided by the decision in Olson v. State, Dep't of Revenue (1988), 235 Mont. 31, 765 P.2d 171.

¶15 In *Olson*, the petitioner alleged that the Montana Department of Revenue (DOR) had denied him his right to application of a veterans' and handicapped persons' preference in public employment. Specifically, the petitioner argued that the preference should have been considered prior to application of the "scoring system" utilized by the DOR, "and that consideration of the preference only after applying the scoring system" was invalid. *See Olson*, 235 Mont. at 32-33, 765 P.2d at 171-72. This Court disagreed and upheld the lower court's finding that the petitioner was not entitled to application of the preference because he was not substantially equally qualified with the successful job applicant.

¶16 In reaching this conclusion, the *Olson* Court discussed at what point in the hiring process the public employment preference is required to be given consideration. Noting that the Montana Legislature had met in special session in December of 1983, during which time it had amended the employment preference statutes to their present form, we quoted at length from the statement of intent accompanying that legislation:

> "The legislature intends that public employers seek and hire the most qualified persons for positions in public employment. It is also the intent of the legislature that the nature of the preference is a relative one in that it is to be applied as a 'tie-breaker' among two or more applicants for a position who have substantially equal qualifications. . . . Qualifications should include job-related knowledge, skill and abilities. The legislature recognizes that public employers use a variety of scored and unscored selection procedures . . . . The legislature does not intend to specify the type of selection procedure to be used by a public employer."

*Olson, 235 Mont. at 34, 765 P.2d at 172-73.*

¶17 Although the *Olson* Court also noted that the word "tie-breaker" had been deleted from the statement of intent in committee, it determined that the legislative changes were driven by "considerable dissatisfaction with the absolute preference" accorded under the law existing prior to the amendments. *Olson*, 235 Mont. at 34, 765 P.2d at 173. This Court therefore held that in amending the employment preference statutes, "the Montana

Legislature meant to abolish the absolute employment preference for veterans and handicapped persons who possess the minimum qualifications for a job. Being minimally qualified for the job is no longer enough." *Olson*, 235 Mont. at 35, 765 P.2d at 173. Additionally noting that the Legislature did not intend to "limit the hiring authority to any particular method of assessing job applicants' relative qualifications," the *Olson* Court further held that the DOR "gave proper effect to the statutes in first determining applicants' point scores, then considering whether the preference should be applied." *Olson*, 235 Mont. at 35, 765 P.2d at 173.

¶18 Hamner attempts to distinguish *Olson* by arguing that since the County's classification system failed to utilize an objective "point system" and since the County did not grant him an interview as was the petitioner in *Olson*, the County's selection procedures were not "reasonable" under § 39-30-207(3)(a), MCA (1997). Notwithstanding Hamner's attempts to distinguish *Olson*, we agree with the County that *Olson* closely parallels this case. Here, as in *Olson*, the County devised a reasonable classification system for assessing the applicants' relative qualifications for the position. In applying this classification system, the selection committee determined that Hamner was not "substantially equally qualified" with several other applicants and, for that reason, did not select him for an interview. Therefore, we agree with the County that, under *Olson*, Hamner's disability preference did not come into play.

¶19 This case is controlled by *Olson*. Hamner insinuates that the County's selection method is the consummation of former Justice Sheehy's prophetic "blueprint" dissent to the *Olson* majority, which this author joined. *See Olson*, 235 Mont. at 39-40, 765 P.2d at 175-76 (Sheehy, J., dissenting). However, the *Olson* decision is the current state of the law and is binding upon everyone in Montana, including this author. Under *Olson*, public employers are effectively given *carte blanche* authority in choosing the type of selection procedures to be employed in filling a position of public employment. They may utilize a " 'scored' " system, such as the point system employed by the DOR in *Olson*, or they may utilize an " 'unscored' " system, such as the committee selection method employed by the County here. *See Olson*, 235 Mont. at 34, 765 P.2d at 172-73.

¶20 At the hearing below, each committee member testified that he or she was able, through review of the seventeen applications, to make a reasonable determination that the qualifications held by the applicants selected for an interview were significantly better suited for the advertised position than the qualifications held by the other applicants, including Hamner, who were not selected for an interview. And although Hamner cross-

examined the selection committee members in an attempt to show that he possessed the qualifications set forth in the advertised job description, the County points out that this Court has already rejected the argument that the advertisement alone sets forth the criteria for judging applicants. *See* Hamner v. Butte/Silver Bow County (1988), 233 Mont. 271, 276, 760 P.2d 76, 79-80 (holding that an "analysis" of the applicant's abilities, rather than the advertisement itself, "constitutes the criteria for judging an applicant's qualifications for the position").

¶21 The District Court heard testimony from each of the selection committee members as to their assessment of Hamner's qualifications relative to the other applicants. Hamner has provided this Court with no reason for second guessing the District Court's conclusion that Hamner, though perhaps minimally qualified for the position, was not substantially equally qualified to the other applicants selected for an interview in terms of job-related knowledge, skills, and abilities. We hold that the County carried its burden of proving by a preponderance of the evidence that Hamner did not possess substantially equal qualifications to any of the applicants placed on the "A" or "B" lists in its classification scheme.

¶22 Hamner also makes reference to several other laws in his brief on appeal, including the Americans with Disabilities Act of 1990, the Age Discrimination Act, the Civil Rights Act of 1991, the Age Discrimination in Employment Act, and the Montana Human Rights Act. However, Hamner failed to raise these issues in his pleadings before the District Court. This Court generally will not address an issue that was not presented to the trial court, nor will we permit a party to change its legal theory on appeal. *See* Unified Indus., Inc. v. Easely, 1998 MT 145, ¶ 15, 289 Mont. 255, ¶ 15, 961 P.2d 100, ¶ 15. Furthermore, the County correctly indicates that since Hamner filed this action pursuant to the "Montana Persons with Disabilities Employment Preference Act," §§ 39-30-101 to -207, MCA (1997), enforcement of the disability preference is his exclusive "remedy" under the Act. *See* § 39-30-207(3)(c), MCA (1997). Therefore, we will not consider Hamner's other claims.

¶23 (2) Did the District Court err in determining that the selection process was not tainted, unfair, or biased against Hamner?

¶24 Hamner also alleges that the County's selection procedure was "tainted, unfair, biased and illegal" due to the fact that during the hiring process, one of the committee members, Cooney, withdrew from the selection committee. Cooney is presently employed as the

Regional Administrator for the Montana Department of Revenue (DOR). Hamner's allegations, which might make even a conspiracy theorist envious, appear to suggest that the DOR somehow controlled the selection process for the County's position of Director of Land Records and, therefore, that Cooney's participation "tainted" the hiring process.

¶25 Cooney testified at the show cause hearing. She explained that she was selected as a member of the committee because of her extensive experience in dealing with land records. She also stated that she was not surprised that several of the applicants for the County's position were DOR employees, since each would have the necessary qualifications for the position by virtue of having worked in the rather "limited field" of land records. Cooney testified that she had withdrawn after each selection member had reviewed the seventeen applications and categorized the applicants according to the three "lists." She had withdrawn because, after classifying the applicants, Cooney had discovered that one of the individuals who had been selected for an interview was the same person who was currently performing Cooney's duties for the DOR while Cooney was working on a special project in Helena. Cooney realized that if this person were to receive the County's advertised position, it would disrupt the operation of her office. Because of this conflict of interest, Cooney's reason for withdrawing from the selection process was to avoid any potential prejudice against this particular applicant.

¶26 Although Hamner cross-examined Cooney in an attempt to support his DOR conspiracy theory, her testimony did not support his theory in any way. Moreover, we agree with the County that Cooney's conflict of interest did not taint the selection process or prejudice Hamner. Cooney was only one of the five selection committee members. As mentioned previously, each selection committee member individually categorized the seventeen applicants according to the three "lists." An applicant had to be placed on at least four "A" or "B" lists to warrant an interview. Hamner was not placed on any of the selection committee members' "A" or "B" lists. It was only following such classification that Cooney developed the conflict of interest. Hamner, however, was not affected by this conflict because the individualized review of applications had already occurred and the selection committee had already collectively determined that Hamner was not substantially equally qualified to the other applicants selected for an interview. Put simply, Hamner has failed to show that the selection process was biased against him. Thus, we hold that the District Court did not err in rejecting Hamner's claim that the County's selection process was unfair.

¶27 Affirmed.

/S/ WILLIAM E. HUNT, SR.

We Concur:

/S/ TERRY N. TRIEWEILER

/S/ KARLA M. GRAY

/S/ W. WILLIAM LEAPHART

/S/ JAMES C. NELSON