Mike TIMM, Contestant and Appellant,

v.

Larry SCHOENWALD; Dave Senger, County Auditor of Ward County; The County Canvassing Board of Ward County and its members, Helen Hurly, Dorothy Osteroos, Joan Hauge, Delores Bretheim, John Petrik, Joan Perkins, Brenda Zent, John Semingson, and Stanley Saugstad; The Recount Board of Ward County and its members, Ken Kruse, Ed Leonard, and Gary Williamson; and Ben Meier, North Dakota Secretary of State; Contestees and Appellees.

No. 870001CV.

Supreme Court of North Dakota.

Jan. 27, 1987.

Robert S. Rau, of Bosard, McCutcheon & Rau, Minot, for contestant and appellant.

John J. Petrik, of Pringle & Herigstad, Minot, for contestees and appellees.

Terry L. Adkins (appearance), Asst. Atty. Gen., Bismarck, for North Dakota Secretary of State.

VANDE WALLE, Justice.

Mike Timm appealed from a district court judgment dismissing his election contest against Larry Schoenwald, the Ward County Auditor, the Ward County Canvassing Board and its members, the Ward County Recount Board and its members, and the Secretary of State [Contestees]. We affirm.

Timm and Schoenwald were candidates in the November 4, 1986 general election for the office of State Senator from the Fifth Legislative District in Ward County, North Dakota. On November 7, 1986, the Ward County Canvassing Board certified Timm as the winner of the election by one vote. The North Dakota Canvassing Board certified the results of the Ward County Canvassing Board and thereafter the Secretary of State issued a certificate of election to Timm.

Because Timm's margin of victory was less than one-half of one percent, the Ward County Recount Board conducted a manda-

tory recount and thereafter determined Schoenwald to be the winner of the election by five votes. The Secretary of State rescinded and revoked the certificate of election issued to Timm, and the Ward County Auditor certified the results of the Ward County Recount Board and prepared a corrected abstract of the votes in the election. The North Dakota Canvassing Board canvassed the corrected abstracts and, on November 26, 1986, certified Schoenwald as the winner of the election. On the same date the Secretary of State issued a certificate of election to Schoenwald.

Timm filed this election contest against the Contestees in district court on December 1, 1986, and served them with a summons and complaint on December 2, 1986. Timm alleged that he was improperly denied a certificate of election and that Schoenwald was improperly granted a certificate of election because of the following errors:

"a. Actions of election officials in the 5th Legislative District whereby 29 people were allowed to vote in the 5th District Precinct 6–A who were in fact not residents of said District nor precinct. That said 29 voters were and are in fact persons who and do [sic] reside in the 40–50th Legislative District and incorrectly, illegally, and erroneously voted in the 5th Legislative District and Precinct 6–A.

"b. That the Recount Board did erroneously and unlawfully count defaced and overvoted ballots identified by the Recount Board.

"c. That the Recount Board erroneously and unlawfully counted a vote twice for Larry Schoenwald when it should not have been counted at all.

"d. That Said Recount Board did in fact disenfranchise 11 duly counted resident voters of the 5th Legislative District by its action in disregarding and not counting such votes when said ballots were duly stamped by an election official of the precinct in which the same were cast but not initialed. That these duly qualified electors of the 5th Legislative District were disenfranchised by the Recount Board because of error, neglect, and wrongdoing on the part of election officials."

Timm requested the district court to determine that he was the duly elected candidate for the Senate seat in the Fifth Legislative District and to direct the appropriate officials to issue a certificate of election to him and annul the certificate of election issued to Schoenwald. Alternatively, Timm requested the district court to annul any previously issued certificate of election, to determine that the office was vacant, and to direct that a new election be held in Precinct 6–A of the Fifth Legislative District.

Schoenwald and the Ward County election officials moved to dismiss the action, asserting that the district court did not have jurisdiction to hear a legislative-election contest and, alternatively, that the action was not commenced within the time required by Section 16.1–16–04, N.D.C.C. The district court dismissed with prejudice, concluding that it did not have jurisdiction to hear the action and did not address the timeliness issue.

Timm contends that the district court had jurisdiction to hear this legislative-election contest because Chapter 16.1–16, N.D.C.C., authorizes two alternative forums for hearing legislative-election contests. He argues that legislative-election contests may be heard either in district court or in the Legislature because Sections 16.1–16–01 through 16.1–16–09, N.D.C.C., do not specifically prohibit legislative-election contests to be heard in district court nor do Sections 16.1–16–10 through 16.1–16–17, N.D.C.C., specifically require legislative-election contests be heard only before the Legislature. The Contestees respond that, when read together, Sections 16.1–16–04 and 16.1–16–10, N.D.C.C., require legislative-election contests to be heard only before the Legislature and that the district court does not have jurisdiction to hear those actions.

■ The resolution of this issue requires us to construe the statutory scheme for

election contests in Chapter 16.1–16, N.D. C.C.[1] In construing a statute it is well established that our duty is to ascertain the intent of the Legislature. E.g., *County of Stutsman v. State Historical Society of North Dakota*, 371 N.W.2d 321 (N.D.1985). A statute must be considered as a whole to determine the intent of the Legislature. E.g., *In Interest of Nyflot*, 340 N.W.2d 178 (N.D.1983). The Legislature's intent must be sought initially from the language of the statute as a whole. E.g., *Morton County v. Henke*, 308 N.W.2d 372 (N.D. 1981).

Section 16.1–16–04, N.D.C.C., provides:

*"Time for commencement of action. Any action to contest an election shall be commenced and the complaint shall be filed in the district court of the contestee's county of residence* within five days after final certification of a recount by the appropriate canvassing board, or within fourteen days after the final certification by the appropriate canvassing board if no recount is to be conducted, *except as provided in section 16.1–16–10.* However, if the grounds for the action is the illegal payment of money or other valuable thing subsequent to the filing of any statement of expenses required by this title, or if the contestee does not or cannot meet the qualifications to hold the office as required by law, the action may be commenced at any time. The contestee shall serve and file his answer within fourteen days after service of the contest summons and complaint." [Emphasis added.]

Section 16.1–16–10, N.D.C.C., provides:

*"Legislative contest of election. Legislative election contests shall be determined pursuant to sections 16.1–16–10 through 16.1–16–17.* Any person intending to contest, before either house of the legislative assembly, the election of a member of the legislative assembly shall serve on that member a statement of contest, which shall specify the grounds for the contest. The statement shall be served on the member and a copy filed with the secretary of state within five days after a recount is completed, and within ten days after the canvass is completed if no recount is to be conducted." [Emphasis added.]

Additionally, Section 16.1–16–06, N.D.C.C., provides that "[u]nless otherwise specifically provided in this Chapter, election contest actions shall be tried as civil actions to the court without a jury," and Section 16.1–16–09, N.D.C.C., provides that "[u]nless otherwise specifically provided by

---

1. We note that Chapter 16.1–16, N.D.C.C., is part of an election law revision which began during the 1975 legislative session and culminated with the enactment of H.B. 1225 by the 1981 Legislature. 1981 N.D.Sess.Laws Ch. 241. The 1975 Legislature directed the Legislative Council to revise and modernize our election laws. HCR 3017. During the 1975–1977 legislative interim, the Committee on Judiciary "A" studied existing Title 16 of the North Dakota Century Code relating to election law. As a result of that study, H.B. 1049 was introduced in the Forty-fifth Legislative Assembly and, with amendments, was adopted but was subsequently vetoed by the Governor. 1977 N.D.Sess.Laws Ch. 584. The vetoed bill was reintroduced in the 1979 session as H.B. 1138 and after extensive hearings and revision was again passed by the Legislature and vetoed by the Governor; however, that veto was overridden. 1979 N.D.Sess.Laws Ch. 271. Most of the provisions of that measure were referred to the voters in the November 4, 1980, election and failed to win approval. 1981 N.D. Sess.Laws Ch. 653. In 1981 the bulk of the final 1979 session product was reintroduced as H.B.

1225. After extensive hearings and revision, H.B. 1225 was enacted into law. 1981 N.D.Sess. Laws Ch. 241.

One of the revisions accomplished by the enactment of title 16.1 was to designate the Secretary of State as the *ex officio* supervisor of elections and to have the county auditor rather than the district court supervise elections and conduct recounts. Sections 16.1–01–01(1), and 16.1–16–01, N.D.C.C. To the extent that district courts were removed from supervising the election process, the jurisdiction recognized in *Morgan v. Hatch*, 274 N.W.2d 563 (N.D.1979), and *Kuhn v. Beede*, 249 N.W.2d 230 (N.D.1976), is no longer available. We recognize that, in limited situations where the administrative remedies for counting ballots fail to correct certain enumerated voting errors, Section 16.1–01–08, N.D.C.C., permits a petition to the "supreme court, or the district court of the relevant county where the election of a county officer is involved, for an order compelling the correction of the error, wrong, neglect, or act." Timm has not argued the applicability of that statute on this appeal.

this Chapter, appeals of election contest actions shall be conducted in the manner provided by law or rule for civil appeals from the district court." [2] Section 16.1–16–15, N.D.C.C., provides that a "legislative election contest shall be heard and decided as provided by the legislative assembly."

■ Ordinarily, the use of the word "shall" in a statute indicates a mandatory duty and the use of the word "may" indicates directory duty; however, where necessary to give effect to intent, the word "shall" will be construed as "may." *In Interest of Nyflot*, 340 N.W.2d 178 (N.D. 1983).

We believe the mandatory word "shall" in the above-cited statutes coupled with the "except as provided in section 16.1–16–10" and the "[u]nless otherwise specifically provided in this Chapter" language manifests an intent that legislative-election contests must be heard only before the Legislature. If the Legislature had intended to provide alternative forums for legislative-election contests it would have used the directory word "may" and it would not have included the "except as provided in Section 16.1–16–10" or the "unless otherwise specifically provided in this Chapter" language.

Moreover, the logical extension of Timm's argument would permit legislative-election contests to be heard in either the district court or the Legislature and could conceivably lead to a different result by each body on the same election. That scenario is inconsistent with our principal of separate branches of government and sets up a possible confrontation between the legislative and judicial branches of government. We do not believe the Legislature intended that result, nor do we believe it is consistent with the language of Chapter 16.1–16, N.D.C.C.

We also note that Section 16.1–16–01(8), N.D.C.C., provides that "results of any recount of votes cast in an election of a member of the legislative assembly shall be admissible in either house of the legislative assembly, or before a committee of either house, as evidence to aid in the determination of an election contest pending in that house." Nothing in that section, or any other section in Chapter 16.1–16, N.D.C.C., provides for the admissibility of recount results of a legislative election in a court proceeding. If the Legislature had intended to permit legislative election contests to be heard either in district court or in the Legislature, it would have provided that the results of a recount in a legislative election were admissible in an election contest in district court.[3] We believe that omission in the statutory scheme of Chapter 16.1–16, N.D.C.C., provides further support for the conclusion that the Legislature intended that legislative-election contests be heard only by the Legislature.

■ We conclude that the language of Sections 16.1–16–04 and 16.1–16–10, N.D.C.C., when read together and with Chapter 16.1–16, N.D.C.C., as a whole, manifests an intent that district courts do not have jurisdiction to hear legislative-election contests and that such contests must be heard only before the Legislature pursuant to Sections 16.1–16–10 through 16.1–16–17, N.D.C.C.

Although the precise issue of the right of a contestant to select alternative forums for hearing legislative-election contests under Chapter 16.1–16, N.D.C.C., was not raised in *State ex rel. Olson v. Bakken*, 329 N.W.2d 575 (N.D.1983), we believe the legal posture of that action and our deci-

---

**2.** We note that Chapter 16–14 [Contest of Legislative Assembly Election] and 16–15 [Contesting State or County Elections], N.D.C.C., were repealed when Chapter 16.1–16, N.D.C.C., was enacted. With some variation the repealed chapters were combined into current Chapter 16.1–16, N.D.C.C. However, the former provisions did not include language similar to the exception provisions of the current statutes, and the parties have not cited, nor has our research revealed, any prior legislative history answering the precise issue raised by Timm.

**3.** For example, Section 39–20–08, N.D.C.C., provides that proof of refusal to submit to a blood-alcohol test is admissible in any civil or criminal court proceeding arising out of acts alleged to have been committed by a person driving or in actual physical control while under the influence.

sion therein supports our interpretation of that chapter. In that case we held that, pursuant to Art. VI, § 8, N.D. Const., and Sections 16.1–16–01 through 16.1–16–09, N.D.C.C., the district court had jurisdiction to hear an action brought by twelve voters contesting the entire November 1982 election in Winship precinct, Grand Forks, North Dakota; however, in cases where the challenge to the entire election incidentally involved a legislative race, each house of the Legislature would be the final judge of the election of its members pursuant to Art. IV, § 26, N.D. Const.[4]

In that case a voting guide booklet intended for use at another precinct was erroneously used at Winship precinct, and, as a result, the names of the candidates in the voting guide booklet were not properly aligned with the ballot card. The error was not discovered and corrected until 526 persons had voted, and only those ballots cast after the error was discovered and corrected were certified by the Canvassing Board. Twelve voters brought an action in district court contesting the entire election process; however, the only election with a margin of victory of less than 526 votes was the race for House of Representatives from the Forty-second District.

In reaching our conclusion that the district court had jurisdiction over that action, we specifically stated:

"Significantly, the action commenced by the twelve voters did not contest the election of any legislative candidate specifically (N.D.C.C. §§ 16.1–16–10, et seq.). The challenge was to the election process in which 526 votes were not counted. The contest only incidentally involved legislative candidates." *State ex rel. Olson, supra,* 329 N.W.2d at 579.

The majority opinion and a special concurrence emphasized that the legal posture of that case was a challenge to the entire election process and not a legislative election contest. See *State ex rel. Olson v.*

*Bakken, supra,* [VandeWalle, J., concurring specially.] We reiterate that the legal posture of an election challenge is significant to determine the appropriate forum to hear the case.

In the instant action Timm requested the district court to determine that he was the duly elected candidate from the Fifth Legislative District, to direct the appropriate officials to annul Schoenwald's certificate of election, and to direct the appropriate officials to issue him a certificate of election. Alternatively, Timm requested the district court to determine that the Senate seat was vacant and to order a new election in Precinct 6–A.

The legal posture of this case and the relief requested specifically address Schoenwald's right to hold a legislative office rather than challenge the entire election process. Because of that legal posture, we do not believe that Chapter 16.1–16, N.D. C.C., provides the district court with jurisdiction to hear this action.

Nevertheless, Timm contends that Art. IV, § 12, N.D. Const., approved by the voters at the November 6, 1984, general election and effective on December 1, 1986, is self-executing thereby providing the judiciary with jurisdiction to hear legislative-election contests. Assuming for purposes of discussion that Art. IV, § 12, N.D. Const., is applicable to this action, we are not persuaded by Timm's argument.

Art. IV, § 12, N.D. Const., provides, in relevant part:

"Each house is the judge of the qualifications of its members, *but election contests are subject to judicial review as provided by law.*" [Emphasis Added.]

The underlined language has not heretofore appeared in our Constitution.

In *State ex rel. Agnew v. Schneider,* 253 N.W.2d 184 (N.D.1977), we concluded that, other than locking the supreme and district courts into the Constitution, Section 85 of

---

4. In that case we noted that, in interpreting a constitutional provision similar to Art. IV, § 26, N.D. Const., the United States Supreme Court and several State courts had determined that the constitutional provision did not prevent courts from conducting a recount or exercising jurisdiction in election contests. *State ex rel. Olson v. Bakken, supra,* 329 N.W.2d at 577–578.

the new judicial article was not self-executing. In that case we noted that the Constitution included several clauses with the phrase "as provided by law" and stated that the subject matter modified by such a phrase was not locked into the Constitution but was subject to legislative action.

Similarly, in *State ex rel. Vogel v. Garaas*, 261 N.W.2d 914 (N.D.1978), we concluded that the constitutional requirement that a "judicial nominating committee shall be established by law" was not self-executing and was inoperative until a judicial nominating committee was established by law. We said:

"[I]t is well-settled law that a constitutional provision becomes immediately operative only if it is a self-executing provision, and that it does not become operative without appropriate legislation to implement its objectives if it is a non-self-executing provision. A constitutional provision is self-executing if it establishes a sufficient rule by which its purpose can be accomplished without the need of legislation to give it effect. However, a constitutional provision is non-self-executing wherein it merely establishes general objectives, without setting forth rules by which those objectives can be accom-

plished such that the provision must remain inoperative until appropriate legislation is enacted to give it effect." [Citations omitted.] *State ex rel. Vogel v. Garaas, supra*, 261 N.W.2d at 918.

Upon a careful examination of Art. IV, § 12, N.D. Const., we conclude that it is not self-executing because it sets forth a general objective permitting legislative-election contests to be subject to judicial review as provided by law without establishing specific rules to accomplish that objective. Art. IV, § 12, N.D. Const., is a product of HCR 3029 passed by the 1983 Legislature. As originally debated, HCR 3029 provided that legislative-election contests were subject "exclusively to judicial review as provided by law." However, the word "exclusively" was deleted at the request of Representative John Schneider to provide for judicial review when appropriate. March 7, 1983 Minutes of Joint Constitutional Revisions Committee regarding House Concurrent Resolution 3029. That deletion and the "as provided by law" language evidence an intent that legislation is necessary to implement and give substance to the general objective of permitting judicial review of legislative-election contests.[5] We

---

5. Although the voters approved Art. IV, § 12, N.D. Const., at the November 1984 general election, no legislation was introduced during the 1985 legislative session to implement that provision. But the Legislative Procedure and Arrangements Committee meeting between the 1985 and 1987 Legislative Assembly was assigned the task of studying the need for revision of statutes in light of the 1984 amendments to Article IV of the Constitution of North Dakota. See 1985 N.D.Sess.Laws Ch. 729. The report of the Committee contained in the Report of the North Dakota Legislative Council to the Fiftieth Legislative Assembly, 1987, states at page 152:

"Section 12 of the new Article IV provides that each house is the judge of the qualifications of its members, but election contests are subject to judicial review as provided by law.

"Under NDCC Chapter 16.1–16 election contests, *other than legislative election contests*, are brought as civil actions in district courts. *Legislative election contests are brought before and determined by the appropriate house of the Legislative Assembly.* Discussion of the handling of legislative election contests indicated that the intent of the new constitutional provision making election contests subject to

judicial review was that the Legislative Assembly would not be involved in election recounts, and those contests would be handled in the same manner as other election contests...." [Emphasis Added.]

The recommendations of the Committee are found at the same page of the Report:

"The committee recommends House Bill 1056 to make the statutory changes deemed necessary as the result of the new Article IV.... [L]egislative election contests would be subject to judicial review in the same manner as other election contests as authorized under Section 12 of Article IV; ..."

H.B. 1056, which has been introduced at the Fiftieth Legislative Assembly, would repeal Sections 16.1–16–10 through 16.1–16–17, N.D.C.C., delete the "except as provided in Section 16.1–16–10" language in Section 16.1–16–04, and repeal subsection 8 of Section 16.1–01–01 making the results of recounts for election of a member of the Legislative Assembly admissible in either house of the Legislative Assembly as evidence to aid in the determination of an election contest pending in that house.

conclude that Art. IV, § 12, N.D. Const. is not self-executing.

Timm also contends that Art. IV, § 12, N.D. Const., has impliedly repealed Sections 16.1–16–10 through 16.1–16–17, N.D.C.C. In *State ex rel. Agnew v. Schneider, supra,* 253 N.W.2d at 195–96, we said:

"We are satisfied the rule of law now is that a statute which is valid when enacted is not automatically repealed by implication with the adoption of a non-self-executing constitution or constitutional amendment on the same subject unless the statute is repugnant to, in conflict with, or inconsistent with the new constitution or constitutional amendment. However, if the new constitution or constitutional amendment is self-executing, an implied repeal may well result.

"We also recognize and accept the rule of law that a statute on the books is not automatically repealed by implication upon the adoption of a new constitutional provision if the Legislature under the new constitutional provision could validly have enacted the same statute."

 We believe that the framer's intent in drafting Art. IV, § 12, N.D. Const., as garnered from the history set forth above, establishes that Sections 16.1–16–10 through 16.1–16–17, N.D.C.C., are not repugnant to or inconsistent with that constitutional provision. It follows that the Legislature could have validly enacted Sections

16.1–16–10 through 16.1–16–17, N.D.C.C., after the effective date of Art. IV, § 12, N.D. Const. Accordingly, we conclude that those sections have not been impliedly repealed by the new constitutional provision and further that those statutory provisions require legislative-election contests to be determined before the Legislature.

Under our present law we conclude the district court did not err in determining that it did not have jurisdiction to consider this action. Because of our resolution of the jurisdiction issue, we need not determine whether the action was commenced within the time required by Section 16.1–16–04, N.D.C.C., and it is unnecessary to invoke our original jurisdiction and supervisory powers, as urged by Timm, to decide that issue.

The district court judgment is affirmed.

ERICKSTAD, C.J., LEVINE and GIERKE, JJ., and PEDERSON, Surrogate Justice, concur.

PEDERSON, Surrogate Justice, sitting in place of MESCHKE, J., disqualified.

It is apparent that the Committee was in accord with the interpretation we have placed upon Chapter 16.1–16 as it now exists.