2002 ND 173

**Brenda M. HILGERS, Plaintiff and Appellee,**

v.

**Douglas G. HILGERS, Defendant and Appellant.**

**No. 20010208.**

Supreme Court of North Dakota.

Nov. 5, 2002.

Rehearing Denied Dec. 4, 2002.

Brenda M. Hilgers, pro se, Bottineau, ND, for plaintiff and appellee.

Douglas G. Hilgers, pro se, Duluth, MN, for defendant and appellant.

KAPSNER, Justice.

[¶ 1] Douglas G. Hilgers appeals from two orders, challenging the trial court's refusal to appoint a guardian ad litem for his minor son; the failure to modify the visitation schedule with his son; the modification of his child support obligation; and the denial of his motion to change custody. In addition, the Court considered Douglas's motion to correct the transcript with the merits of the appeal. The trial court did not abuse its discretion in denying Douglas's request to appoint a guardian ad litem for his minor son. The trial court was not clearly erroneous in denying his motion to change custody. The trial court did not err in denying the motion for correction and modification of the record, and we deny the motion for correction and modification of the record. The trial court erred as a matter of law when it failed to create a visitation schedule. The trial court also erred when it failed to explain its reasons for setting the effective date for the reduction in child support. We affirm in part, reverse in part, and remand for further proceedings consistent with this opinion.

I.

[¶ 2] Douglas and Brenda were married in April of 1980. They had four children. Brenda initiated divorce proceedings in the summer of 1998. A default divorce proceeding occurred on August 31, 1998. Findings of fact, conclusions of law, and an order for judgment were issued on September 2, 1998. Judgment was entered on September 3, 1998. In the instant appeal, only one son is a minor.

[¶ 3] Brenda lives in Bottineau, North Dakota and has custody of the minor son. Douglas lives in Duluth, Minnesota. The current visitation schedule, set in the divorce judgment, entitles Douglas to reasonable visitation to be exercised in Bottineau, North Dakota, after giving 24 hours' advance notice to Brenda. The divorce judgment further ordered Douglas to pay child support for two children in the amount of $977.00 per month. The child support obligation was re-evaluated at a hearing on April 18, 2001. The trial court

ordered a reduction in child support to reflect Douglas's current income. The monthly child support obligation was reduced to $610.00 for two children, effective December 1, 2000.

[¶ 4] Douglas's appeal is based on orders from a April 18, 2001, hearing and July 13, 2001, telephonic hearing. He appeals the trial court's refusal to appoint a guardian ad litem for his minor son during the April 18, 2001, hearing. Douglas also appeals the effective date of the child support reduction and the trial court's failure to modify the visitation schedule in the June 18, 2001, order. Additionally, Douglas appeals the trial court's July 30, 2001, order, denying his motion for custody based on evidence presented during the July 13, 2001, telephonic hearing.

## II.

[¶ 5] Douglas argues the trial court erred when it refused to appoint a guardian ad litem for his minor son. He asserts the court should have appointed a guardian ad litem to represent the son's rights concerning custody and visitation.

[¶ 6] Under § 14–09–06.4, N.D.C.C., a guardian ad litem may be appointed for children in custody, support, and visitation proceedings:

In any action for an annulment, divorce, legal separation, or other action affecting marriage, where either party has reason for special concern as to the future of the minor children, and in any action where the custody or visitation of the children is contested, either party to the action may petition the court for the appointment of a guardian ad litem to represent the children concerning custody, support, and visitation.

[¶ 7] The trial court's decision to proceed without a guardian ad litem will not be overturned unless the court has abused its discretion. *See Ludwig v.*

*Burchill,* 514 N.W.2d 674, 677–78 (N.D. 1994). A trial court has abused its discretion when it acts in an arbitrary, unreasonable, or unconscionable way. *Healy v. Healy,* 397 N.W.2d 71, 75 (N.D.1986). In *Ludwig,* the trial court did not abuse its discretion when it denied the motion for the appointment of a guardian ad litem because it was "satisfied that it [could] consider the best interests of the child involved without the appointment of a guardian ad litem." *Ludwig,* 514 N.W.2d at 677–78. The court noted the language of § 14–09–06.4, N.D.C.C., does not require the appointment of a guardian ad litem upon a party's motion; instead, appointment of a guardian at litem is at the trial court's discretion. *Id.* at 677.

[¶ 8] Douglas requested the appointment of a guardian ad litem for his minor son, age 14, at the April 18, 2001, hearing to represent his son's interests concerning visitation. While the statute provides that either party may petition the court for the appointment of a guardian ad litem when visitation is contested, the trial court concluded visitation was not contested. The trial court's reasoning is stated in the transcript as follows:

THE COURT: I guess the issue that I just want to feel out where we are going here, is it appears that Ms. Hilgers is not opposed to significant visitation. Based on that, I see no dandy reason to have a guardian.

[¶ 9] The trial court allowed Douglas to present further testimony to support his request for appointing a guardian ad litem. Douglas testified to conduct occurring between the parties and relating to the minor son. Following Douglas's testimony, the transcript of the hearing indicates the trial court refused to appoint a guardian ad litem for the minor son, explaining as follows:

THE COURT: Okay. Just a minute. I am trying to make some sense, Mr. Hilgers, about this guardian ad litem issue that you bring up. A guardian ad litem means a guardian for a specific purpose, generally for a legal hearing to represent the person in court.

MR. HILGERS: Correct.

THE COURT: A guardian ad litem is not a person who is a baby-sitter, overseer, friendly uncle, whatever else or anything like that. And as to what I have heard so far, I can see no good reason for a guardian ad litem of the child.

If the child needs to tell the Court something, the child can tell the Court something. If the child feels that he is abused for one reason or another, he can report his feelings to social services the same as anyone else.

So I am quite sure we are not going to get anywhere with your guardian ad litem issue. The guardian ad litem is for a different function.

[¶ 10] The transcript of the hearing demonstrates the trial court did not abuse its discretion in denying Douglas's request for appointing a guardian ad litem for his minor son. The child was permitted to testify at the hearing. There is no indication that a guardian ad litem was needed to represent the minor son's interests. *See* *Ludwig*, 514 N.W.2d at 677 (concluding the trial court did not act in an arbitrary, unreasonable, or unconscionable way when it could consider the best interests of the child without appointing a guardian ad litem). Under these circumstances, we cannot say the trial court acted arbitrarily, unreasonably, or unconscionably in denying Douglas's request for appointing a guardian ad litem for his minor son. Thus, we affirm the trial court's decision in denying Douglas's request for the appointment of a guardian ad litem for his son.

## III.

■ [¶ 11] Douglas argues the trial court erred by failing to make findings regarding his request to modify the visitation schedule.

[¶ 12] Douglas's request for modification of the visitation schedule was clearly raised in the trial court, and both parties set forth a visitation schedule. The visitation schedule in effect from the divorce judgment provides for "reasonable visitation at reasonable hours and with 24 hours advance notice to [Brenda]." In addition, Douglas is to remain in Bottineau, North Dakota during his visitation with the child. The parties have failed to observe the provision requiring Douglas to remain in Bottineau, North Dakota, when he visits his son as Brenda has permitted Douglas, on several occasions, to take the child to Douglas's home in Duluth, Minnesota.

[¶ 13] The transcript of the hearing indicates both parties provided the court with a visitation schedule. Douglas requested the following visitation schedule: every other weekend, recognizing he will not exercise every weekend opportunity; a week primarily during Christmas holidays; access to any spring holiday break at school, if there is one; and extended summer visitation from approximately May 25 to the time football practice begins, approximately August 4. Douglas also requested the provision that visitation occur in Bottineau, North Dakota, be stricken. Brenda did not object or raise any concerns with regard to striking the provision requiring visitation to occur in Bottineau, North Dakota.

[¶ 14] Brenda requested at the hearing 48 hours' notice prior to Douglas exercising visitation. Douglas stated during the hearing that he had no objection to the notice requirement. Brenda also request-

ed the child be with her for the Christmas of 2001 and then every other Christmas after 2001. To facilitate extended summer visitation, Brenda provided the court with a written schedule of the child's summer activities, including the last day of school in May and the start of football practice in August. Brenda also specifically requested that the child not unnecessarily miss school.

[¶ 15] Although modification of the visitation schedule was clearly before the court, the order is wholly silent on the issue. From the record, we are unable to determine whether the court considered this issue and impliedly denied the modification request or merely forgot about it. *See Berg v. Berg*, 2000 ND 37, ¶ 8, 606 N.W.2d 903 (stating that when the record does not disclose the evidentiary or theoretical basis for the court's decision, we cannot properly perform our function as an appellate court and a remand is necessary). Thus, the trial court erred as a matter of law when it did not make any determination regarding visitation when Brenda conceded at the hearing that some visitation is appropriate, that present restrictions on visitation were not being observed by either party, and she provided the trial court with a visitation schedule. *See Lukenbill v. Fettig*, 2001 ND 47, ¶ 9, 623 N.W.2d 7 (stating that a trial court errs as a matter of law when it fails to make required findings or required findings are not intelligible).

[¶ 16] The transcript of the hearing indicates Brenda is not opposed to significant visitation. Both parties presented to the trial court their requests concerning visitation with the non-custodial parent. The requests of both parties were different from the existing visitation provisions. When we are unable to discern that the court considered and decided a critical issue, a remand is necessary to resolve the issue. *Redfield v. Bitterman*, 2000 ND 217, ¶ 13, 620 N.W.2d 570. Accordingly, we reverse and remand with directions to make findings and to create a visitation schedule according to the evidence presented at the April 18, 2001, hearing.

## IV.

[¶ 17] Douglas argues the trial court erred in setting December 1, 2000, as the effective date of the reduction in his child support obligation.

[¶ 18] In *Logan v. Bush*, 2000 ND 203, ¶ 8, 621 N.W.2d 314, we summarized our standard of review for child support determinations.

Child support determinations involve questions of law which are subject to the de novo standard of review, findings of fact which are subject to the clearly erroneous standard of review, and may, in some limited areas, be matters of discretion subject to the abuse of discretion standard of review.

We review the effective date for a modification of child support under an abuse of discretion standard. *Edwards v. Edwards*, 1997 ND 94, ¶ 16, 563 N.W.2d 394. A trial court abuses its discretion when it acts in an arbitrary, unconscionable, or unreasonable manner. *Mahoney v. Mahoney*, 1997 ND 149, ¶ 39, 567 N.W.2d 206.

[¶ 19] We recently concluded in *Geinert v. Geinert*, 2002 ND 135, ¶ 10, 649 N.W.2d 237, "a modification of child support generally should be made effective from the date of the motion to modify, absent good reason to set some other date." This Court further concluded that "[t]he trial court retains discretion to set some later effective date, but its reasons for doing so should be apparent or explained." *Id.* Prior to our pronouncement in *Geinert*, the effective date of a modification of child support was at the trial court's discretion. *See Olson v. Olson*, 1998 ND 190, ¶ 15, 585

N.W.2d 134 (stating the effective date of modification of child support depends on the facts of each case, and the court may make its order effective on the date the motion was filed, any date the motion was pending, the date the court issued its order, or some later date).

[¶ 20] In this case, the child support reduction was ordered prior to our decision in *Geinert.* The burden is placed on the obligor to produce information concerning the obligor's income when a child support order is being reviewed. N.D.C.C. § 14–09–08.6(1); N.D. Admin. Code § 75–02–04.1–07(8); *Schmidt v. Reamann,* 523 N.W.2d 70, 72 (N.D.1994). Douglas only provided the court with a copy of his 2000 income tax return. Although it is permissible for the trial court to set an effective date for modification of a child support order later than the date of the motion to modify, we are unable to properly review the trial court's determination when we cannot discern its reasons for selecting a particular date. Therefore, we remand for consideration of and an explanation for setting the effective date of the child support reduction.

## V.

[¶ 21] Douglas argues the trial court did not adequately consider the best interests of the child when it denied his motion for a change of custody. He asserts the trial court did not give enough weight to (1) the minor son's preference to live with Douglas, and (2) the emotional ties the minor son has with Douglas.

[¶ 22] A trial court's decision to modify custody is a finding of fact subject to the clearly erroneous standard of review. *Barstad v. Barstad,* 499 N.W.2d 584, 587 (N.D.1993). A finding of fact is clearly erroneous if there is no evidence to support it, if the finding is induced by an erroneous view of the law, or if the review-ing court is left with a definite and firm conviction a mistake has been made. *Mosbrucker v. Mosbrucker,* 1997 ND 72, ¶ 5, 562 N.W.2d 390.

[¶ 23] When a trial court entertains a motion to change custody of children of divorced spouses, the court applies a two-step process to determine (1) whether there has been a significant change of circumstances following the divorce and custody determination, and (2) whether the change of circumstances affects the child in such an adverse way that it requires a change in the existing custody arrangement to further the best interests of the child. N.D.C.C. § 14–09–06.6(6); *Mosbrucker,* 1997 ND 72, ¶ 6, 562 N.W.2d 390.

[¶ 24] A party seeking custody modification under N.D.C.C. § 14–09–06.6(4) is entitled to an evidentiary hearing if the party brings a prima facie case, by alleging, with supporting affidavits, sufficient facts which, if uncontradicted, would support a custody modification in favor of that party. *O'Neill v. O'Neill,* 2000 ND 200, ¶ 5, 619 N.W.2d 855. However, where the movant's allegations are, on their face, insufficient, even if uncontradicted, to justify custody modification, the court, under N.D.C.C. § 14–09–06.6(4), can find the moving party has not brought a prima facie case and deny the motion without an evidentiary hearing. *Wagaman v. Burke,* 2002 ND 51, ¶¶ 4, 11, 642 N.W.2d 178 (finding the trial court did not err when it denied the motion to change custody and no hearing was held because no prima facie case was established under N.D.C.C. § 14–09–06.6(5)).

[¶ 25] In this case, Douglas, without complying with the requirements of N.D.C.C. § 14–09–06.6(4), set a hearing date for the motion to change custody. The trial court permitted a hearing on the motion for a change of custody despite the

absence of a finding of a prima facie case that a material change of circumstances had occurred and that modification was needed to serve the best interests of the child. Although the trial court improperly permitted a hearing without a showing of a prima facie case under N.D.C.C. § 14–09–06.6(4) and denied the motion for a change of custody upon a review of the best interest factors set forth in N.D.C.C. § 14–09–06.2, we, nevertheless, cannot conclude the trial court was clearly erroneous.

[¶ 26] Under N.D.C.C. § 14–09–06.6(6), custody may be modified if the trial court finds both a material change in the circumstances of the child or the parties, and the best interests of the child will be served by modifying custody. The trial court considered the best interests of the child without first requiring Douglas to establish a material change in circumstances. We will not set aside a correct result merely because an incorrect, more relaxed standard was applied, if the result would be the same under the correct law and reasoning. *State ex rel. D.D. v. G.K.*, 2000 ND 101, ¶ 6, 611 N.W.2d 179. Therefore, we cannot conclude the trial court was clearly erroneous when it denied Douglas's motion for a change in custody.

## VI.

[¶ 27] Douglas filed with the trial court a motion for correction and modification of the record under N.D.R.App.P. 10(h). He argues that, based on his notes and recollection of the hearings, the transcript contains multiple omissions and misstatements of the hearing. The trial court denied Douglas's motion for correction and modification of the record in an order dated May 29, 2002. The trial court reasoned "[i]nasmuch as the Court is faced with the option only of agreeing with the court reporter or with the memory of one of the parties, I must agree with the reporter." We cannot conclude the trial court erred in denying Douglas's motion to correct the record.

[¶ 28] Under Rule 10(h), N.D.R.App.P., this Court has authority to correct an omission in the record to ensure the record conforms with the truth. *Ratajczak v. Ratajczak*, 1997 ND 122, ¶ 9, 565 N.W.2d 491. Douglas has not convinced us that the trial court erred when it refused to change the record or that any significant record before the trial court is missing for purposes of this appeal. Thus, the motion for correction and modification of the record is denied.

## VII.

[¶ 29] The trial court did not abuse its discretion in denying Douglas's request to appoint a guardian ad litem for his minor son. The trial court was not clearly erroneous in denying his motion to change custody. The trial court did not err in denying the motion for correction and modification of the record, and we deny the motion for correction and modification of the record. The trial court erred as a matter of law when it failed to address the request for a modification of the visitation schedule. The trial court also erred when it failed to explain its reasoning for setting the effective date of the child support reduction at December 1, 2000. We affirm the denial of the request to appoint a guardian ad litem, the motion for custody, and the motion for correction and modification of the record. We reverse and remand with directions to create a visitation schedule based on evidence at the April 18, 2001, hearing. We also remand for consideration of and an explanation for setting the effective date of the child support reduction.

## VIII.

[¶ 30] We have considered the remaining issues raised by the parties, and they are either unnecessary to our decision or are without merit.

[¶ 31] GERALD W. VANDE WALLE, C.J., DALE V. SANDSTROM, WILLIAM A. NEUMANN and MARY MUEHLEN MARING, JJ., concur.