2002 ND 206

**Danni Jane SWEENEY, n/k/a Danni Jane Lynch, Plaintiff, Appellant and Cross–Appellee,**

v.

**David James SWEENEY, Defendant, Appellee and Cross–Appellant.**

No. 20010129.

Supreme Court of North Dakota.

Dec. 20, 2002.

Charles L. Neff, Neff, Eiken & Neff, P.C., Williston, ND, for defendant and cross-appellant.

Irvin B. Nodland, Irvin B. Nodland, P.C., Bismarck, ND, for plaintiff and cross-appellee.

NEUMANN, Justice.

[¶ 1] David Sweeney cross-appealed from an amended divorce judgment,[1] alleging the trial court erred in denying his motion to change custody of the parties'

---

1. Danni also appealed from the judgment, but subsequently withdrew her appeal.

minor child, in denying his request for costs and attorney's fees, and in refusing to suspend his child support obligation. We affirm the trial court's denial of the motion to change custody and refusal to suspend child support, but we reverse and remand on the issue of costs and attorney's fees.

I

[¶ 2] Danni and David Sweeney were married in Minnesota in 1989 and had one child, Charlie. During the marriage Danni and Charlie lived for extended periods with Danni's family in North Dakota. In 1990, Danni filed for divorce in Minnesota and moved permanently with Charlie to North Dakota. The original Minnesota divorce decree entered in 1991 granted custody of Charlie to Danni and specified visitation for David.

[¶ 3] Because of difficulties in exercising visitation under the original decree, the parties participated in mediation and David moved the Minnesota court to enforce his visitation rights. On September 14, 1994, the Minnesota court entered a second amended judgment which contained a detailed visitation schedule and specific protocols for telephone contact between David and Charlie. The second amended judgment was filed as a foreign judgment in this state to allow enforcement in Williston, where Danni and Charlie were living. After negotiations between the parties, some visitations did occur between 1994 and 1996. Danni filed a motion in North Dakota in May 1995 seeking restrictions on Charlie's travel for visitations with David, who had moved to Utah.

[¶ 4] After an October 1996 visit in Utah, Charlie told David in a telephone call that he never wanted to see him again. Charlie has never given a reason for his reluctance to visit David. The parties sub-sequently filed numerous motions, David seeking to enforce his visitation rights under the second amended judgment and Danni seeking extensive restrictions on visitation.

[¶ 5] In 1997 a guardian ad litem was appointed for Charlie to facilitate and supervise visitation, and to advise whether unsupervised visits were appropriate. After meeting with Charlie and supervising a few visits, the guardian ad litem moved to withdraw, citing interference and noncooperation by Danni and her family and friends.

[¶ 6] In March 1998, David filed a motion for a change of custody or, in the alternative, to strictly enforce his visitation rights. David also moved for costs and attorney's fees under N.D.C.C. § 14–09–24 for Danni's continued obstruction of visitation. Danni responded by seeking a continuance and alleging for the first time in these proceedings that David had physically and sexually abused her during the marriage. In response to these allegations, and subsequent allegations by Danni that David may have abused Charlie, the court appointed a psychologist to make recommendations on custody and visitation after evaluating David, Danni, and Charlie. Danni was uncooperative with the court-appointed psychologist, and she eventually moved to terminate his appointment and to prevent further psychological evaluations of Charlie. Because of these conflicts, the court ordered the psychologist to prepare his report based upon the information he had collected to that point.

[¶ 7] The court held evidentiary hearings in September 1998 and August 2000. Danni sought restrictions on David's visitation with Charlie. David sought a change of custody, sought costs and attorney's fees based upon Danni's willful and persistent interference with visitation and her unsubstantiated allegations of abuse, and

sought suspension of his child support obligation to recoup his costs and attorney's fees.

[¶ 8] The trial court issued its findings of fact, conclusions of law, and order for judgment on March 28, 2001. The court found that Danni had "engaged in a continued course of conduct which minimized, limited, and obstructed David's relationship with Charlie," including "failing to allow David reasonable access to the child; failure to follow the visitation orders of the Minnesota court; and failing to implement visitation orders of this Court." The court further found there was no credible evidence that David had committed abuse of Danni or Charlie. The court determined that Danni should retain custody, but the court specifically noted this was Danni's "final opportunity" to recognize and facilitate David's visitation rights. The court further stated that, if Danni failed to comply with the ordered visitation, the court would, after a limited hearing, change custody. The court denied David's motions for attorney's fees and his motion to suspend child support to recoup his costs and attorney's fees. The court did order Danni to pay one-half of the bills of the guardian ad litem and court-appointed psychologist, and ordered her to pay approximately one-fourth of David's travel expenses for attempting to enforce his visitation rights in North Dakota. An amended judgment was entered on April 4, 2001. Danni appealed and David cross-appealed.

## II

[¶ 9] David argues the trial court's decision denying his motion for a change of custody is clearly erroneous.

[¶ 10] In resolving a motion to change custody, the trial court must determine (1) whether there has been a significant change in circumstances since the original custody decree, and, if so, (2) whether a change of custody is necessary to serve the best interest of the child. N.D.C.C. § 14-09-06.6(6); *BeauLac v. BeauLac*, 2002 ND 126, ¶ 12, 649 N.W.2d 210; *Kelly v. Kelly*, 2002 ND 37, ¶ 15, 640 N.W.2d 38. The party seeking modification bears the burden of showing a change of custody is required. N.D.C.C. § 14-09-06.6(8); *BeauLac*, at ¶ 12; *Selzler v. Selzler*, 2001 ND 138, ¶ 21, 631 N.W.2d 564. A trial court's decision whether to change custody is a finding of fact subject to the clearly erroneous standard of review on appeal. *Hilgers v. Hilgers*, 2002 ND 173, ¶ 22, 653 N.W.2d 79; *Kelly*, at ¶ 13. A finding of fact is clearly erroneous if there is no evidence to support it, if the finding is induced by an erroneous view of the law, or if the reviewing court is left with a definite and firm conviction a mistake has been made. *Hilgers*, at ¶ 22; *Kelly*, at ¶ 13. In close cases involving custody of children between two fit parents, it is especially appropriate to give due regard to the trial court's opportunity to determine the credibility of the witnesses. *BeauLac*, at ¶ 12.

[¶ 11] When a request for a change of custody is predicated upon the custodial parent's frustration of the noncustodial parent's visitation rights, the court must act with restraint and caution. *Anderson v. Resler*, 2000 ND 183, ¶ 9, 618 N.W.2d 480. We have explained the delicate balance between the competing rights, privileges, and interests in such cases:

> Visitation between a child and her noncustodial parent is presumed to be in the best interests of the child. Visitation is not only a privilege of the noncustodial parent, but also a right of the child. Only when visitation "is likely to endanger the child's physical or emotional health," may it be withheld.

Having recognized and acknowledged the importance of the noncustodial par-

ent's visitation privilege, we have also emphasized that frustration of visitation does not alone constitute a sufficient change in circumstances to warrant a change in custody. Before visitation problems justify changing custody, there must be a finding that the visitation problems had worked against the child's best interests. In this case, while the district court found that [the mother's] efforts to frustrate visitation, in effect, deprived [the child] of contact with loving family members, that deprivation is better remedied at first by resort to a more rigid visitation schedule, rather than a change of custody.

*Anderson*, at ¶ 9 (quoting *Blotske v. Leidholm*, 487 N.W.2d 607, 610 (N.D.1992)). We have also recognized that, although other methods should be used initially to remedy frustration of visitation, after exhausting other remedies a change in custody may be the only effective method to correct the damage caused by a particularly stubborn and defiant custodial parent. *Anderson*, at ¶ 10; *Hendrickson v. Hendrickson*, 2000 ND 1, ¶ 18, 603 N.W.2d 896; *Hendrickson v. Hendrickson*, 1999 ND 37, ¶ 13, 590 N.W.2d 220.

[¶ 12] We concluded in *Anderson*, 2000 ND 183, ¶ 11, 618 N.W.2d 480 (citations omitted):

> In a change of custody proceeding, the best interests of the child must be measured against the backdrop of the stability of the child's relationship with the custodial parent. The important factor in weighing stability is the stability of the child's relationship with the custodial parent. However, notwithstanding a happy normal child with strong bonds of attachment to the custodial parent, egregious violations of specific court ordered visitation, evidence of an intransigent attitude against visitation rights and alien-

ating behavior can weigh against the child's best interests.

*See also Lovin v. Lovin*, 1997 ND 55, ¶ 17, 561 N.W.2d 612.

■ [¶ 13] In addressing custody and visitation, the trial court made the following findings of fact:

### X.

The bulk of the expert testimony agrees that it is in the child's best interest to reestablish a functional parent-child relationship between Charlie and his father.

From a complete review of the extensive record made in this action, the Court finds that it is in the paramount best interests of Charlie that the father-son relationship between Charlie and David be accomplished as soon as possible under circumstances where Charlie and David have a reasonable opportunity to reestablish their father-son relationship free from any interference from Danni.

The Court finds that for reasons involving time as well as the practical aspects of distance and expense, it is not reasonable to reintegrate visitation between Charlie and David over the course of many small visits as was recommended to this Court by one of Danni's expert witnesses. Rather, this Court finds more merit in adopting the approach recommended by the Court's appointed master and expert child psychologist, Dr. Stephan Podrygula, who has recommended that to reestablish visitation, it will probably be necessary to force Charlie into spending several weeks with David in Utah, away from any contact with Danni, to allow the father-son relationship to reestablish itself.

Dr. Podrygula expects some initial anxiety on the part of Charlie in reestablishing the relationship. However, just as has occurred on all previous visits Charlie has made to Utah, after several days, Charlie has quickly adapted to his new surroundings, and by all accounts, Charlie has enjoyed his visits in Utah. Dr. Stephan Podrygula further states that David's new wife, Teri, who is herself a doctor of pediatric medicine, as well as Charlie meeting his two new half siblings would all add to help Charlie reestablish a good relationship with his father.

## XI.

The Court has made several findings recounting how Danni has persistently interfered with the visitations of father and child since the child's birth. It is not clear to the Court whether such actions are based upon an intentional plan of interference, or whether such activities relate to a degree of selfishness and/or overprotectiveness.

Further, the Court's expert, Dr. Podrygula, suggests that unless Danni could change her obstructive attitude and demonstrate the ability to require Charlie to attend visitation, it would be necessary for a change of custody to occur to allow David an opportunity to develop the relationship and be the person in control of Charlie.

Accordingly, although it appears that significant grounds exist for a change of custody, I decline changing custody at this time in order to allow Danni a final opportunity to fulfill her obligations under the law as a custodial parent which require her to recognize, facilitate, and enforce, rather than obstruct, the visitation rights held by David with the child.

In the event Danni is unable or unwilling to comply with the visitation herein-after ordered, the Court, after a limited hearing on that issue, would have no option other than a change of custody to protect the best interests of the child, and the best interests would require such change.

[¶ 14] On this record, we are able to clearly understand the trial court's factual determinations and can discern the rationale for the result reached by the court. The findings demonstrate the court was fully aware of the applicable legal standards, and recognized that the child's best interest was the paramount consideration. By recognizing it was in Charlie's best interest to reestablish a relationship with his father through extended visitation in Utah, and by forewarning that any further frustration of visitation would trigger a change of custody to protect the best interest of the child, the court impliedly found that it was in Charlie's best interest to remain in Danni's custody for one "final opportunity."

[¶ 15] David argues that the court's decision to deny a change of custody was clearly erroneous. We recognize that, in cases such as this, the court is faced with a veritable Hobson's choice. By all accounts Charlie is a healthy, happy, well-adjusted child who is doing well in school and extracurricular activities and has loving parents and extended family. While recognizing that Danni has in the past obstructed David's attempts to establish a relationship with Charlie, the court was also understandably reluctant to disrupt the stability of Charlie's relationship with his mother and his natural attachment to the place he has called home for most of his life. Under these difficult circumstances, the court decided it was in Charlie's best interest to remain with his mother, but with extensive visitation with his father in Utah and with the warning that any future interference with visitation by Danni would result in a

change of custody. We conclude that the trial court's decision denying David's motion to change custody was not clearly erroneous.

## III

■ [¶ 16] David argues the trial court erred in denying his requests for costs and attorney's fees under N.D.C.C. §§ 14–09–06.5 and 14–09–24. Those statutes provide:

14–09–06.5. Allegation of harm to child—Effect. If the court finds that an allegation of harm to a child by one parent against the other is false and not made in good faith, the court shall order the parent making the false allegation to pay court costs and reasonable attorney's fees incurred by the other parent in responding to the allegation.

14–09–24. Interference with visitation—Attorney's fees—Enforcement remedies and tools. In any proceeding in which child visitation is properly in dispute between the parents of a child, the court shall award the noncustodial parent reasonable attorney's fees and costs if the court determines there has been willful and persistent denial of visitation rights by the custodial parent with respect to the child. The court may use any remedy that is available to enforce a child support order and which is appropriate to enforce visitation.

■ [¶ 17] Both statutes provide that the court "shall" award reasonable attorney's fees and costs if the requisite circumstances are present. Ordinarily, the word "shall" in a statute creates a mandatory duty. *Lippert v. Grand Forks Pub. Sch. Dist.,* 512 N.W.2d 436, 439 (N.D. 1994); *In re C.J.A.,* 473 N.W.2d 439, 441 (N.D.1991); *Timm v. Schoenwald,* 400 N.W.2d 260, 263 (N.D.1987). The word "shall" is "generally imperative or mandatory ... excluding the idea of discretion,

and ... operating to impose a duty." *Homer Township v. Zimney,* 490 N.W.2d 256, 259 (N.D.1992) (quoting Black's Law Dictionary 1375 (6th ed.1990)). Where necessary to effect the intent of the legislature, however, the word "shall" will be interpreted as creating a duty that is merely directory. *Lippert,* at 439. If the duty prescribed in the statute is essential to its main objectives, the word "shall" is to be construed as creating a mandatory duty. *In re C.J.A.,* at 441.

■ [¶ 18] We have reviewed the language and legislative histories of these statutes and find no indication the legislature intended the respective duties created to be merely directory rather than mandatory. We therefore interpret the word "shall" according to its ordinary meaning, creating a mandatory duty. Accordingly, under N.D.C.C. § 14–09–06.5, a trial court must award reasonable attorney's fees and court costs if it finds that an allegation of harm to the child is false and was not made in good faith. Under N.D.C.C. § 14–09–24, a trial court must award reasonable attorney's fees and costs if it finds there has been willful and persistent denial of visitation rights by the custodial parent.

[¶ 19] In this case, David cited both statutes and requested attorney's fees and costs. The trial court, however, failed to make specific findings whether Danni's allegations of harm to Charlie were made in good faith and whether Danni's denial of David's visitation rights was "willful and persistent." On the issue of harm to Charlie, the court found there was no credible evidence to support Danni's allegations and that David had never abused Charlie. The court failed to address whether Danni's allegations were made in good faith. On the issue of interference with visitation rights, the court found that Danni had "persistently interfered" with visitation, but failed to make an express

finding whether her interference was "willful." The court equivocated on this issue, stating: "It is not clear to the Court whether such actions are based upon an intentional plan of interference, or whether such activities relate to a degree of selfishness and/or overprotectiveness."

[¶ 20] This is not a situation where we can clearly understand the court's factual determinations and discern through inference or deduction the rationale for the trial court's result. *See Hendrickson v. Hendrickson,* 2000 ND 1, ¶ 19, 603 N.W.2d 896; *Holtz v. Holtz,* 1999 ND 105, ¶ 18, 595 N.W.2d 1; *Reinecke v. Griffeth,* 533 N.W.2d 695, 698 (N.D.1995). It is unclear from the court's decision whether it understood and applied the appropriate legal standards under N.D.C.C. §§ 14–09–06.5 and 14–09–24. In awarding partial costs, the court labeled it as an award of "sanctions" against Danni, noting that Danni's obstruction of visitation had precipitated the need for this action to enforce visitation, and that Danni had made allegations of abuse and harm to herself and Charlie which contributed to the "increased expenses" and "protracted nature" of the litigation. The court therefore ordered Danni to pay one-half of the fees of the guardian ad litem and court-appointed psychologist, and approximately one-fourth of David's travel expenses to attempt to enforce his visitation rights.

[¶ 21] If the triggering factors in the statutes are present, the court must award costs and reasonable attorney's fees. The court failed to make findings on the triggering factors, but awarded partial costs as a sanction, taking into consideration Danni's ability to pay. It is unclear from these findings and conclusions whether the court correctly applied the appropriate legal standards in determining whether to award costs and attorney's fees under the statutes. Accordingly, we reverse the denial of attorney's fees and the award of costs and remand for the trial court to make more explicit findings and to award reasonable attorney's fees and costs in accordance with the statute if the triggering factors are present.

IV

[¶ 22] David argues the trial court erred in refusing to suspend his child support obligation as a means to recoup the attorney's fees and costs he has expended in this action. David argues that, if Danni retains custody, the court should "suspend David's child support as a means to start recouping the large sums of money now owed by Danni as a consequence of her behavior." David's argument is premised upon the faulty assumption that the child support payments belong to Danni and inure to her benefit. It is well settled that child support belongs to the child, and the custodial parent has only a representational right to collect support on behalf of the child. *Toni v. Toni,* 2001 ND 193, ¶ 11, 636 N.W.2d 396; *Sullivan v. Quist,* 506 N.W.2d 394, 397 (N.D.1993); *Spilovoy v. Spilovoy,* 488 N.W.2d 873, 877 (N.D.1992); *Sprynczynatyk v. Celley,* 486 N.W.2d 230, 232 (N.D.1992). It would be fundamentally unfair to allow an offset of child support, which belongs to and benefits the child, against amounts owed by the custodial parent for interfering with visitation.

[¶ 23] We addressed a similar situation in *Hendrickson v. Hendrickson,* 1999 ND 37, 590 N.W.2d 220. In *Hendrickson,* the trial court ordered that the child support payments be placed in a separate account for the children's secondary education, as a sanction for the custodial parent's interference with visitation. We reversed, noting that, under the child support guidelines, child support is to be paid to the custodial parent to use for the child's current expenses. *Id.* at ¶ 9. We cautioned that

"child support is presumed to benefit the children not the custodial parent and should not be used as a wedge or a club to force compliance with the court's orders." *Id.* at ¶ 10.

[¶ 24] David argues that suspension of child support is authorized under N.D.C.C. § 14–09–24, which provides that, if the court orders payment of attorney's fees and costs for a custodial parent's willful and persistent denial of visitation rights, the court "may use any remedy that is available to enforce a child support order and which is appropriate to enforce visitation." David argues that the statute authorizes the trial court to suspend his child support payments as an offset against the attorney's fees and costs he has expended. Suspension of a child support obligation is neither a "remedy that is available to enforce a child support order" nor one which is "appropriate to enforce visitation." The statute does not authorize suspension of a noncustodial parent's child support obligation to recoup costs and attorney's fees owed by a custodial parent for interfering with visitation.

[¶ 25] We conclude the trial court did not err in refusing to suspend David's child support obligation.

### V

[¶ 26] We affirm the trial court's denial of the motion to change custody and refusal to suspend David's child support obligation, but we reverse and remand for more explicit findings and reconsideration of attorney's fees and costs under N.D.C.C. §§ 14–09–06.5 and 14–09–24.

[¶ 27] GERALD W. VANDE WALLE, C.J., MARY MUEHLEN MARING, CAROL RONNING KAPSNER, JJ., concur.

SANDSTROM, Justice, dissenting.

[¶ 28] Both custodial and noncustodial parents have a duty to support their minor children. N.D.C.C. § 14–09–10. Both custodial and noncustodial parents have a right to contact with their children. N.D.C.C. § 14–05–22(2).

[¶ 29] The legislature has acted, seeking to ensure support by the noncustodial parent, *see, e.g.,* N.D.C.C. §§ 14–09–08.1, 14–09–24, and courts have moved strongly to enforce this duty. *See, e.g., Zarrett v. Zarrett,* 1998 ND 49, ¶ 10, 574 N.W.2d 855. The legislature has acted, seeking to ensure the visitation rights of noncustodial parents, N.D.C.C. §§ 14–05–22(2), 14–09–06.6(6), 14–09–24, and courts must move strongly to vindicate those rights. *Berg v. Berg,* 2002 ND 69, 642 N.W.2d 899 (Sandstrom, J., concurring in the result).

[¶ 30] The right of noncustodial parents to visitation is not just a statutory right—it is a right of constitutional magnitude. *Id.* at ¶¶ 30–31. Unless restricted or forfeited by serious misconduct of the noncustodial parent, noncustodial-parent visitation rights must be enforced by court action if necessary. *See id.* at ¶ 32; N.D.C.C. § 14–09–06.6.

[¶ 31] When visitation rights are wrongfully obstructed, courts must move forcefully. The sad history of *Hendrickson v. Hendrickson* and similar cases reflects that strong, early, not late, court action is necessary. *See, e.g., Hendrickson v. Hendrickson,* 553 N.W.2d 215 (N.D. 1996); *Hendrickson v. Hendrickson,* 1999 ND 37, 590 N.W.2d 220; *Hendrickson v. Hendrickson,* 2000 ND 1, 603 N.W.2d 896; *Interest of C.H.,* 2001 ND 37, 622 N.W.2d 720.

[¶ 32] The legislature has provided for a change in custody when there is persistent and willful denial or interference with visitation. N.D.C.C. § 14–09–06.6(5)(b).

The two-year wait after a prior custody order does not apply. N.D.C.C. § 14–09–06.6(5). The majority correctly states, at ¶ 10:

> In resolving a motion to change custody, the trial court must determine (1) whether there has been a significant change in circumstances since the original custody decree, and, if so, (2) whether a change of custody is necessary to serve the best interest of the child. N.D.C.C. § 14–09–06.6(6); *BeauLac v. BeauLac*, 2002 ND 126, ¶ 12, 649 N.W.2d 210; *Kelly v. Kelly*, 2002 ND 37, ¶ 15, 640 N.W.2d 38. The party seeking modification bears the burden of showing a change of custody is required. N.D.C.C. § 14–09–06.6(8); *BeauLac*, at ¶ 12; *Selzler v. Selzler*, 2001 ND 138, ¶ 21, 631 N.W.2d 564. A trial court's decision whether to change custody is a finding of fact subject to the clearly erroneous standard of review on appeal. *Hilgers v. Hilgers*, 2002 ND 173, ¶ 22, 653 N.W.2d 79; *Kelly*, at ¶ 13.

[¶ 33] Here, the trial court made no finding as to whether a change in custody is necessary to serve the best interest of the child. *See* N.D.C.C. § 14–09–06.6(6). The trial court found persistent interference by the mother with visitation and found the father a fit and proper parent. Indeed, contrary to the majority's unsupported assertion, the trial court's findings, if anything, seem to suggest that the best interest of the child would be served by a change in custody, but the court decided to give the custodial mother one more chance:

> Accordingly, although it appears that significant grounds exist for a change of custody, I decline changing custody at this time in order to allow Danni a final opportunity to fulfill her obligations under the law as a custodial parent which require her to recognize, facilitate, and

enforce, rather than obstruct, the visitation rights held by David with the child.

[¶ 34] I would reverse and remand for the trial court to make a specific finding whether "modification is necessary to serve the best interest of the child." *See* N.D.C.C. § 14–09–06.6(6)(b).

[¶ 35] DALE V. SANDSTROM